# STATE OF MICHIGAN

# COURT OF APPEALS

JENNIFER JANE KENNEDY,

Plaintiff-Appellant,

v

ROBERT LEE AUTO SALES,

Defendant-Appellee.

FOR PUBLICATION
November 24, 2015
9:05 a.m.

No. 322523
Ingham Circuit Court
LC No. 13-001377-CZ

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

BECKERING, J.

This case arises out of the sale of a car, which resulted in the parties suing each other and plaintiff, Jennifer Jane Kennedy, alleging among other things that defendant, Robert Lee Auto Sales, violated the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq.*, and the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*[1] The parties reached a settlement agreement wherein plaintiff received all of her money back and defendant agreed to pay plaintiff's statutory attorney fees and costs, the determination of which they ultimately left to the trial court. Plaintiff appeals as of right the trial court's order awarding $1,000 for her attorney fees and costs. Plaintiff contends that the trial court abused its discretion by arbitrarily awarding $1,000 without considering the remedial purpose of the fee-shifting provisions of the MMWA and the MCPA as well as other factors directed by the Michigan Supreme Court in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008) when ascertaining a reasonable attorney fee. We agree, and thus, we vacate and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On or about August 30, 2012, plaintiff purchased a 2003 Chevrolet Impala from defendant, making a down payment of $2,200 and entering into a retail installment contract for the remaining balance. She also granted defendant a security interest in the car. Defendant

---

[1] Robert Lee Auto Sales assigned its retail installment contract and security agreement with plaintiff to Consumer Portfolio Services, Inc., (CPSI). CPSI sued plaintiff in district court, whereafter plaintiff filed a counterclaim and third-party complaint against defendant, and the case was removed to Ingham Circuit Court.

subsequently assigned the retail installment contract and security agreement to Consumer Portfolio Services, Inc. (CPSI).

Plaintiff made only two payments on the retail installment contract before defaulting. On August 9, 2013, CPSI filed suit against plaintiff in district court, alleging breach of contract and seeking possession of the car. Plaintiff[2] responded to the complaint by filing an answer, counterclaim, a third-party complaint, and a motion for removal to Ingham Circuit Court. Plaintiff's third-party complaint raised several claims, including that defendant violated the MMWA and the MCPA.[3] In November of 2013, the case was removed to Ingham Circuit Court by stipulation of the parties.

CPSI and plaintiff reached a settlement wherein CPSI cancelled plaintiff's debt and deleted the matter from her credit history, and plaintiff promised to return the vehicle to CPSI after her claims against defendant were resolved. The trial court dismissed the claims against CPSI and the case continued between defendant and plaintiff.

On January 30, 2014, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). Noting that one of the counts in plaintiff's complaint sought rescission of the sales contract, defendant offered to refund plaintiff's down payment of $2,200 in exchange for the return of the vehicle.[4] It also argued that plaintiff's remaining claims were meritless.

At a hearing on the motion for summary disposition, plaintiff's counsel stated that, among other relief, plaintiff was seeking a refund of the down payment and the payments she initially made on the contract before defaulting. The trial court suggested that the parties attempt to reach a settlement in the case. After a short break in the proceedings, the parties agreed to settle the case for $2,675.18, which was the amount of plaintiff's down payment plus the two monthly installment payments she made. In addition, with respect to "statutory attorney fees"— plaintiff's complaint sought statutory attorney fees under the MMWA and MCPA—the parties agreed to "allow the Court to make that decision." The trial court expressly asked Robert Lee, the owner of defendant, whether he understood and agreed to the settlement, which would allow the court to decide the amount of fees to be awarded. Lee answered, "I think you can do a fair

---

[2] For the sake of consistency, we will refer to plaintiff in the case at hand as "plaintiff" throughout this opinion regardless of her designation in the district court action. We will also apply the same protocol to defendant.

[3] In addition to other allegations of wrongdoing, plaintiff claimed that contrary to defendant's specific representations to her about who had previously owned the vehicle and the condition it was in when she purchased it, defendant knew or should have known that the vehicle had been involved in a serious collision resulting in damage so extensive it was unsafe to operate on the public highways.

[4] It is unclear how plaintiff could have returned the vehicle to defendant when she was required to return it to CPSI under the terms of her settlement with CPSI. Nor is it clear why defendant would be entitled to a return of the automobile when defendant had sold the consumer installment agreement and security agreement to CPSI.

job, yes, sir." With regard to attorney fees, the parties stated that they would attempt to work out the amount of fees owed without the court's involvement, but if they could not, plaintiff would petition the court to determine the fee award. The trial court entered a written order memorializing the settlement and stating, in regard to attorney fees that "in the event that the parties are unable to resolve the amount of statutory attorney fees and costs on their own, Plaintiff's counsel shall notify the Court so that a briefing and hearing schedule may issue[.]"

In the months that followed, the parties were unable to resolve the amount of attorney fees, leading plaintiff to file a "Petition for Assessment of Statutory Costs and Attorney Fees Pursuant to Settlement Agreement." Citing the factors set forth in *Smith*, plaintiff requested a total of $14,943.04, of which $14,267.50 was attorney fees and $675.54 was costs. Attached to the petition were several documents, including billing records for this case, the 2010 Economics of Law Practice Survey published by the State Bar of Michigan, and caselaw applying the MMWA.

Defendant responded that plaintiff's cost and fees should be limited to $891.72, which was 1/3 of plaintiff's recovery against defendant. Any other amount, according to defendant, "would be unfair and inequitable[.]" Defendant claimed that this is the amount that "would have actually been charged" to plaintiff to "defend" defendant's motion for summary disposition. Implicit in this argument was the idea that defendant should not be liable to pay attorney fees incurred in the proceedings involving CPSI.

After hearing brief arguments from the parties at a June 4, 2014 hearing, the trial court stated that it was awarding plaintiff $1,000 in costs and attorney fees:

> THE COURT: Okay. Let me just say, this kind of an attorney fee billing on a case as nickel and dime as this is far beyond what I would ever allow in a lawsuit, nor do I feel it's a fair amount at all. You are awarded a thousand dollars.
>
> I might also add, there is nothing in this settlement or agreement here that there was any violation of the Consumer Protection Act. The mere fact that you sue under an act is no determination by this Court there was a violation, with all due respect. You get a thousand dollar attorney fee. Thank you.

The trial court subsequently entered a written order granting plaintiff $1,000 in costs and attorney fees.[5] Plaintiff now appeals the order as of right.

II. ANALYSIS

We review the trial court's award of attorney fees for an abuse of discretion. *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008). An abuse of discretion occurs when the

---

[5] We note that the trial court's $1,000 award was for both costs and attorney fees. Plaintiff's petition stated that her costs in the action were $675.54. If true, this left an attorney-fee award of only $324.46.

trial court's decision is outside the range of reasonable and principled outcomes. *Id*. Plaintiff argues that the trial court's award of attorney fees was an abuse of discretion because: (1) it failed to apply the framework set forth by our Supreme Court in *Smith*; and (2) it failed to consider the remedial purpose of the fee-shifting provisions of the MMWA and the MCPA.

## A. PLAINTIFF'S ENTITLEMENT TO ATTORNEY FEES

We begin our analysis by briefly touching on plaintiff's entitlement to attorney fees. Although the trial court awarded attorney fees to plaintiff, it appeared to doubt plaintiff's entitlement to such fees, noting that nothing in the settlement agreement established a violation of the MCPA, and that "[t]he mere fact that you sue under an act is no determination by this Court there was a violation . . . ." On appeal, defendant appears to contest plaintiff's entitlement to attorney fees as well.

On this point, we agree with plaintiff that the facts of this case are substantially similar to the facts of *Lavene v Winnebago Indus*, 266 Mich App 470; 702 NW2d 652 (2005). In *Lavene*, the plaintiff sued the defendant under the MCPA and MMWA, both of which provide for an award of attorney fees and costs. *Id*. at 472. See also MCL 445.911(2) ("Except in a class action, a person who suffers loss as a result of a violation of [the MCPA] may bring an action to recover actual damages or $250.00, whichever is greater, *together with reasonable attorneys' fees*.") (emphasis added); 15 USC 2310(d)(2) (allowing the recovery of costs, expenses, and attorney fees in an action under the MMWA). The parties reached a settlement agreement wherein the defendant agreed to pay the plaintiff's attorney fees and costs owed pursuant to statute or court rule. *Lavene*, 266 Mich App at 472. The settlement provided that if the parties could not agree on the amount of fees and costs, the trial court would decide the matter. *Id*. Later, the parties could not agree on the appropriate amount of fees. *Id*. The defendant argued that the court could not impose attorney fees or costs because the plaintiff was not a "prevailing party," given that there was a settlement but no judgment against the defendant. *Id.* at 473. In rejecting that argument, this Court noted that MCR 2.625(H) recognized that taxation of costs could be reserved in a settlement. *Id*. at 474. This Court also concluded that the defendant's argument was "a moot point, if not disingenuous" because the defendant agreed to pay " 'whatever costs [the plaintiff] may be entitled to.' " *Id*.

The facts of the case at bar are essentially the same. Plaintiff sued defendant under the MCPA and MMWA, and the parties reached a settlement wherein they agreed that if they could not determine the amount of "statutory attorney fees and costs on their own," the trial court would decide the matter. Thus, any argument that plaintiff was not entitled to statutory attorney fees because there was no judgment against defendant is without merit. See *id.*

## B. DOES THE ANALYSIS OF *SMITH V KHOURI* APPLY IN THIS CASE?

We next turn our attention to whether the framework established by our Supreme Court in *Smith* applies to the award of attorney fees in this case. For the reasons discussed below, we hold that it does, and that the trial court's award of attorney fees, which was rendered with virtually no explanation or examination of the relevant factors, was an abuse of discretion. In doing so, we note our belief that the *Smith* framework applies to all fee-shifting statutes, even though other panels on this Court have disagreed with that position. However, given our

conclusion that there is no binding authority to prevent *Smith* from applying in this particular case, we find it unnecessary to declare a conflict with those prior decisions.[6] Furthermore, we would hold that even if the *Smith* framework does not apply, the trial court's cursory explanation for the award of attorney fees in this case was an abuse of discretion.

## 1. THE SUPREME COURT'S DECISION IN *SMITH V KHOURI*

In general, a party is not entitled to an award of attorney fees and costs unless such an award is expressly authorized by statute or court rule. *Haliw v Sterling Hts*, 471 Mich 700, 706; 691 NW2d 753 (2005). At issue in *Smith*, 481 Mich at 522, was an award of attorney fees under MCR 2.403 as case-evaluation sanctions, and the factors to be applied in evaluating such an award. The lead opinion[7] in *Smith* noted that the party seeking fees has the burden to establish the reasonableness of the requested fees. *Id.* at 528. Next, the lead opinion explained that, in assessing reasonableness, our courts traditionally considered the following six factors set forth in *Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982):

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Smith*, 481 Mich at 529, quoting *Wood*, 413 Mich at 588.]

In addition, explained *Smith*, courts have traditionally considered the following eight factors found in MRPC 1.5(a), some of which overlap with the *Wood* factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

---

[6] Moreover, we would find declaring a conflict unnecessary, given that we are bound to follow our Supreme Court's decision in *Smith* over conflicting decisions from this Court. See *Charles A Murray Trust v Futrell*, 303 Mich App 28, 48-49; 840 NW2d 775 (2013).

[7] Chief Justice Taylor authored the lead opinion in *Smith* and was joined by now-Chief Justice Young. Justice Corrigan, joined by Justice Markman, filed a concurring opinion which "concur[red] with the reasoning and result of the lead opinion, with one exception." *Smith*, 481 Mich at 538 (CORRIGAN, J., concurring). The "one exception" concerned certain factors to be eliminated when determining a reasonable attorney fee for case-evaluation sanctions, and is not pertinent to our discussion of the issues in this case.

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent. [*Smith*, 481 Mich at 530, quoting MRPC 1.5(a).]

Citing to *Wood*, 413 Mich at 588, the lead opinion in *Smith* also noted that "[t]he above factors have not been exclusive, and the trial courts should consider any additional relevant factors." *Smith*, 481 Mich at 530.

After setting forth the above factors, the lead opinion in *Smith*, 481 Mich at 530, announced that "our current multifactor approach needs some fine-tuning." As an initial step in determining the reasonableness of an attorney-fee award, the lead opinion concluded, "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a)." *Id.* Next, the court should multiply the customary fee by "the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood*.)" *Id.* The product of these numbers was to serve "as the starting point for calculating a reasonable attorney fee." *Id.* at 531. This starting point, explained the lead opinion, was designed to "lead to greater consistency in [fee] awards." *Id.* After determining this appropriate starting point, the court "should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate." *Id.*

## 2. THE LEAD OPINION'S DISCUSSION ABOUT THE REACH OF THIS NEW FRAMEWORK AND "STARTING POINT" FOR ASSESSING REASONABLENESS

As noted, the Court in *Smith*, 481 Mich at 522, framed the issue to be decided in that case as one involving an award of case-evaluation sanctions under MCR 2.403(O). The opinion also noted that MCR 2.403(O)(2) provided for an award of "a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation." *Id.* at 527, quoting MCR 2.403(O)(6).[8] In addition, the opinion discussed at some length the purpose of imposing case-evaluation sanctions. *Id.* at 527-528. In particular, the opinion explained that MCR 2.403(O)(2) is a fee-shifting provision designed "to encourage the parties to seriously consider the evaluation and provide financial penalties to the party that, as it develops, 'should' have accepted [the case-evaluation award] but did not." *Id.* This type of "encouragement" helped to not only foster settlements, but "also shifts the financial burden of trial onto the party who imprudently rejected the case evaluation." *Id.* at 128.

---

[8] This type of an "hours times rate" focus bears an unmistakable resemblance to the "starting point" created in *Smith*.

However, not all of the language in *Smith* was so limited to case-evaluation sanctions. For instance, the Court began its analysis in that case by describing the multi-factor approach commonly used by courts in determining the reasonableness of an attorney-fee award—an approach that applied to all attorney-fee awards—and admitted that this "current multifactor approach needs some fine-tuning." *Id.* at 530. In announcing that such "fine-tuning" was needed, the opinion made no virtually no mention of case-evaluation sanctions again, much less specified that this new approach was limited to cases involving attorney fees awarded as case evaluation sanctions. In fact, when determining that this "fine-tuning" was meant to provide "greater consistency in awards," the panel did not specify that this "greater consistency" was only meant for attorney fees awarded as case-evaluation sanctions. And, when the Court later summarized the new rule it had established, the opinion simply announced a rule that "*a trial court*" should use for "determining *a reasonable attorney fee*" and did not mention case evaluation sanctions or state in any way that the new framework should only be applied in cases involving case-evaluation sanctions. *Id.* at 537 (emphasis added).

Moreover, in responding to criticisms levied by the dissent in that case, the Court stated that it sought to provide a framework that could apply to Michigan's other fee-shifting statutes. For instance, the Court acknowledged that selecting a reasonable hourly rate to apply to an attorney-fee award was "not an exact science . . . ." *Id.* at 535. The opinion continued, stating that it did not set out to provide an exact science for determining a reasonable hourly rate; instead, it "merely aim[ed] to provide a workable, objective methodology for assessing reasonable attorney fees *that Michigan courts can apply consistently to our various fee-shifting rules and statutes*." *Id.* (emphasis added). The Court continued with the idea that its discussion was intended as guidance on fee-shifting statues in general, as it criticized the dissenting Justices for offering "no rubric to guide Michigan courts," and emphasized that "[u]nlike the dissent, we choose to provide the guidance that has been, and the dissent would allow to remain, sorely lacking for the many Michigan courts that are asked to *impose 'reasonable attorney fees' under our fee-shifting rules and statutes*." *Id*. at 536 (emphasis added).

Yet, not all of the justices were convinced that the Court's opinion was clear with regard to when the new framework set forth therein should apply. Among other concerns expressed in his dissenting opinion, Justice Cavanagh took issue with the lead opinion for its lack of clarity in this regard:

> Does this now mean that the third factor of MRPC 1.5(a) is the starting point for all proceedings under that provision of our ethical code? Further, does this new rule apply to other fee-shifting provisions? For example, does the majority's test apply to the fee-shifting provisions of the Uniform Condemnation Procedures Act, MCL 213.66, and the Michigan Civil Rights Act, MCL 37.2802, each of which involves reasonable attorney fees? And if today's rule only applies to MCR 2.403, what is the basis for such a limited application of the new rule? [*Smith*, 481 Mich at 555 (CAVANAGH, J., dissenting).

### 3. POST-*SMITH* DEVELOPMENTS

In two post-*Smith* orders, our Supreme Court has applied the *Smith* framework, i.e., beginning with an analysis of an attorney fee award by multiplying a reasonable number of hours

by a reasonable hourly rate, then making adjustments based on the *Wood*/MRPC factors, to cases involving attorney fees awarded in Freedom of Information Act (FOIA) cases and Headlee Amendment cases. *Coblentz v Novi*, 485 Mich 961; 774 NW2d 526 (2009); *Adair v State*, 494 Mich 852; 830 NW2d 383 (2013). However, some of the justices were critical of their colleagues for what they felt was a failure to follow the precedent established in *Smith* when the Court issued an order in *Juarez v Holbrook*, 483 Mich 970; 764 NW2d 216 (2009). In *Juarez*, the Supreme Court denied leave in a case involving an appeal from this Court's decision—issued one day before the Supreme Court issued its decision in *Smith*—affirming an award of case-evaluation sanctions. See *Juarez v Holbrook*, unpublished opinion per curiam of the Court of Appeals, issued July 1, 2008 (Docket Nos. 275040; 276312). In separate dissents, Justice Corrigan and Justice Markman would have vacated this Court's opinion affirming the fee award and remanding for reconsideration in light of the recently-established *Smith* framework. See *Juarez*, 483 Mich 970 (CORRIGAN, J., dissenting, and MARKMAN, J., dissenting).

This Court's application of the *Smith* framework to fee-shifting statutes and court rules other than MCR 2.403 has been a source of dissension. For instance, in *Adair v State (On Third Remand)*, 298 Mich App 383, 390; 827 NW2d 740 (2012), overruled in part on other grounds 494 Mich 852 (2013), a panel of this Court applied the *Smith* framework to Headlee Amendment cases.[9] In doing so, the panel noted the "aim" of the *Smith* framework was " 'to provide a workable, objective methodology for assessing reasonable attorney fees that Michigan courts can apply consistently to our various fee-shifting rules and statutes.' " *Id.*, quoting *Smith*, 481 Mich at 390. At issue *Adair* was Const 1963, art 9, § 32, which governed the costs to be awarded to plaintiffs who brought actions to enforce provisions of the Headlee Amendment. *Adair (On Third Remand)*, 298 Mich App at 390. Recognizing that a fee-shifting provision was at issue in that case, the panel applied the *Smith* framework in order to assess the reasonableness of the attorney fee-award. *Id.* Although our Supreme Court later reversed the panel's decision in part, it did not overrule the opinion on this point, and in fact favorably cited *Smith* in its order. See *Adair v State*, 494 Mich 852.

In addition to *Adair*, other panels of this Court have applied the *Smith* framework to various fee-shifting statutes. For instance, in *Prins v Michigan State Police*, 299 Mich App 634, 645; 831 NW2d 867 (2013), the panel applied the *Smith* framework to an award of attorney fees in a FOIA case. In addition, in *Silich v Rongers*, 302 Mich App 137, 149-150; 840 NW2d 1 (2013), the panel favorably cited the *Smith* framework in a case involving an award of attorney fees under MCR 3.403(C), a court rule that pertains to the sale of premises and division of proceeds as substitution for partition. And, although it did so in dicta, the panel in *Augustine v Allstate Ins Co*, 292 Mich App 408, 429, 435-436; 807 NW2d 77 (2011), stated it would find that the *Smith* framework applied to an award of attorney fees under MCL 500.3148(1) of the no-fault act in a situation where a plaintiff seeks recovery for attorney fees on an hourly (as

---

[9] As noted above, our Supreme Court later affirmed the use of the *Smith* framework in Headlee Amendment cases. See *Adair v State*, 494 Mich 852.

compared to a contingent fee) basis.[10] Further, in several unpublished decisions, this Court has applied the *Smith* framework to other fee-shifting statutes. See, e.g., *Demopolis v Jones*, unpublished opinion per curiam of the Court of Appeals, issued April 16, 2015 (Docket No. 320099) (applying the *Smith* framework when awarding attorney fees on a quantum meruit theory); *Annis v Annis*, unpublished opinion per curiam of the Court of Appeals, issued April 16, 2015 (Docket No. 319577) (applying the *Smith* framework to an award of attorney fees as sanctions under MCR 2.114); *Barker v Marshall*, unpublished opinion per curiam of the Court of Appeals, issued July 24, 2014 (Docket Nos. 308990; 311843) (applying *Smith* to an award of attorney fees under MCL 600.2919a); *Dep't of Natural Resources v Rexair*, unpublished opinion per curiam of the Court of Appeals, issued November 26, 2013 (Docket No. 297663) (applying *Smith* to the assessment of attorney fees as sanctions associated with the plaintiff's filing of a post-judgment motion following a consent judgment); *C&D Capital, LLC v Colonial Title Co*, unpublished opinion per curiam of the Court of Appeals, issued May 23, 2013 (Docket Nos. 306927; 308262) (applying the *Smith* framework to an award of attorney fees under MCR 2.114 and MCL 600.2591).

However, other panels have declined to apply the *Smith* framework to an award of attorney fees under fee-shifting statutes or court rules beyond the fee-shifting rule that was at issue in *Smith*, i.e., an award of fees under MCR 2.403. For instance, in *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 700, 700 n 3; 760 NW2d 574 (2008), the panel held that the *Smith* framework applied to an award of attorney fees under MCR 2.403, the fee-shifting provision at issue in *Smith*, but not to an award of attorney fees under MCL 500.3148(1) of the no-fault act. More recently, in *Riemer v Johnson*, __ Mich App __; __ NW2d __ (Docket No. 321057, issued August 18, 2015), slip op at 13, this Court declined to apply *Smith* to an award of attorney fees under MCR 3.206(C)(2)(a), applicable to domestic relations actions. The panel explained that the *Smith* framework was limited to an award of attorney fees under MCR 2.403(O), emphasizing that the issue in *Smith* concerned " 'a trial court's award of 'reasonable' attorney fees *as part of case-evaluation sanctions under MCR 2.403(O).*' " *Id.*, quoting *Smith*, 481 Mich at 522 (emphasis in *Riemer*). In addition, several unpublished cases, including unpublished cases dealing with an award of attorney fees under the MCPA—one of the statutes at issue in this case—have declined to apply the *Smith* framework. See, e.g., *McNeal v Blue Bird Corp*, unpublished opinion per curiam of the Court of Appeals, issued June 12, 2014 (Docket No. 308763) (declining to apply the *Smith* framework to an award of attorney fees under the MCPA); *Stariha v Chrysler Group, LLC*, unpublished opinion per curiam of the Court of Appeals, issued June 28, 2011 (Docket No. 301238) (declining to apply the *Smith* framework to an award of attorney fees under the MCPA and the MMWA).

---

[10] As will be discussed *infra*, another panel on this Court reached a contrary ruling in a published decision. See *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 700; 760 NW2d 574 (2008).

## 4. *SMITH* SHOULD APPLY IN THIS CASE

After considering all of the forgoing authorities, we hold that it is appropriate to apply the *Smith* framework to the award of attorney fees at issue in this case.[11] We view the Court's opinion in *Smith* as containing two pronouncements that the rule established therein was to be applied to "our various fee-shifting rules and statutes" and was intended to provide guidance for "Michigan courts that are asked to impose 'reasonable attorney fees' under our fee-shifting rules and statutes." *Smith*, 481 Mich at 535-536. In this regard, we find instructive the reasoning employed in *Adair (On Third Remand)*, 298 Mich App at 390, in applying the *Smith* framework to FOIA's fee-shifting provision. Notably, the panel in *Adair* recognized that in *Smith*, our Supreme Court stated that the "aim" of the new framework created therein was " 'to provide a workable, objective methodology for assessing reasonable attorney fees that Michigan courts can apply consistently to our various fee-shifting rules and statutes.' " *Id.*, quoting *Smith*, 481 Mich at 535. Likewise, in this case, because both the MCPA and the MMWA contain fee-shifting provisions, we deem it appropriate to apply the *Smith* framework. See *Smith*, 481 Mich at 535; *Adair (On Third Remand)*, 298 Mich App at 390.

In reaching the conclusion that the *Smith* framework should apply to this and other fee-shifting statutes and court rules, we are also swayed by the pronouncement of the lead opinion in *Smith*, 481 Mich at 519, that "our current multi-factor analysis"—that is, the multi-factor analysis of the *Wood* factors and MRPC 1.5(a) that is used in evaluating reasonableness in attorney-fee cases—"needs some fine-tuning." The lead opinion did not cite anything pertaining to an award of attorney fees under MCR 2.403—the Court Rule pursuant to which fees were authorized in that case—when making this proclamation; rather, it simply stated that the analysis currently being employed in evaluating the reasonableness of attorney fees "needs some fine-tuning."[12] Given that no one disputes that that multi-factor analysis applies to an award of

---

[11] We note that plaintiff's entitlement to attorney fees in this case arises from the settlement's reference to "statutory attorney fees," meaning attorney fees authorized by the MCPA (state law) and the MMWA (federal law). In *Jordan v Transnational Motors, Inc*, 212 Mich App 94, 97-98; 537 NW2d 471 (1995), this Court applied our multi-factor test to determine the reasonableness of attorney fees under the MCPA and the MMWA. See also *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 221; 457 NW2d 42 (1990) (applying state law—the *Wood* factors—to determine the reasonableness of attorney fees awarded under the MMWA). Thus, we see fit to apply state law to determine the reasonableness of attorney fees in this instance.

[12] In this regard, we also note that the lead opinion proclaimed that this "fine-tuning" would lead to "greater consistency in awards." *Smith*, 481 Mich at 531. If greater consistency were truly the goal, it would be reasonable to assume that the consistency sought was with regard to all attorney-fee awards, not just attorney fees awarded as case-evaluation sanctions. Indeed, what would be the point of announcing a rule that would lead to greater consistency in only one type of attorney-fee award, but would provide no guidance with regard to other attorney-fee awards?

-10-

attorney fees under the MCPA and the MMWA, we see fit to apply *Smith*'s "fine-tuning" to the instant case.[13]

More importantly, we have found no binding authority that would act as an impediment to applying *Smith* in the context of MCPA and MMWA actions.[14] Although defendant directs our attention to this Court's decision in *Smolen v Dahlmann Apartments, Ltd*, 186 Mich App 292; 463 NW2d 261 (1990), a case that precedes *Smith* by 18 years, we do not agree that this decision prevents us from applying the *Smith* framework in this case. In *Smolen*, the plaintiffs were awarded attorney fees under the fee-shifting provisions of the MCPA. *Id.* at 293-294. On appeal, the plaintiffs asked this Court to "set forth specific additional items [aside from the *Wood* factors] which should be considered in determining attorney fees." *Id.* at 296. Among those "specific additional items," for which they advocated, plaintiffs asked this Court to endorse a "starting point" for the award, which was to consist of a reasonable number of hours multiplied by a reasonable rate, and for this starting point to be "presumed to provide a reasonable fee." *Id.* at 296-297. The plaintiffs also asked this Court to hold that they were entitled to an upward adjustment in this amount to "reflect exceptional success." *Id.* at 297.

The panel in *Smolen* declined to adopt the plaintiffs' suggestions. As to the proposed starting point, the panel declined to adopt "any rigid formula . . . that fails to take into account the totality of the special circumstances applicable to the case at hand." *Id.* The panel also declined to find that a reasonable number of hours multiplied by a reasonable rate was a presumptively reasonable fee. *Id.* Further, the panel declined to find that the plaintiffs were entitled to certain upward adjustments, instead deferring to the discretion of the trial court. *Id.*

For several reasons, we decline to read *Smolen* as foreclosing our ability to use the *Smith* framework in this case. As an initial matter, even if *Smolen* could be read to prevent the application of the *Smith* framework in MCPA cases, we note that the attorney fees awarded in this case were awarded, from our review of the record, under *both* the MCPA *and* the MMWA. Indeed, the settlement in this case refers to "statutory attorney fees," and we can no sooner conclude that fees were awarded under the MCPA than we can conclude that they were awarded

---

[13] While we are of the opinion that the framework established in *Smith* should apply to our various fee-shifting statutes and court rules, we need not expressly decide this broader issue and we are careful not to wade too far into these murky waters, given that this Court has reached a contrary result in two published decisions. See *Riemer*, __ Mich App at __; slip op at 13; *Univ Rehab Alliance*, 279 Mich App at 700. Instead, our holding in this regard is simply that the *Smith* framework applies in this particular type of case. In other words, regardless of whether the *Smith* opinion was unambiguous about the application of the *Smith* framework and regardless of the analysis in *Adair (On Third Remand)*, we would still apply the *Smith* framework to the fee-shifting provisions in the MCPA and the MMWA.

[14] As noted above, there exist two unpublished decisions in which this Court found that the *Smith* framework did not apply to an award of attorney fees under the MCPA. See *McNeal*, unpub op at 14-15; *Stariha*, unpub op at 6. However, we are not bound by these unpublished decisions. MCR 7.215(C)(1).

under the MMWA. Given the differences in factual scenarios between this case and *Smolen* and what the plaintiffs in that case were asking this Court to do, we find *Smolen* inapplicable. Moreover, as noted above, *Smolen* was decided approximately 18 years before *Smith* was decided. We decline to find that the reasoning employed in *Smolen* could have somehow rejected the application of a case that was released nearly two decades later.[15] In addition, we read *Smolen* as being compatible with the *Smith* framework. While *Smolen* purported to reject a "starting point" of reasonable hours multiplied by a reasonable hourly rate, it appears that the plaintiffs in that case wanted this "starting point" to be a much more inflexible starting point than the starting point that was set forth in *Smith*. To that end, this Court in *Smolen* rejected the proposed starting point as advocated for by the plaintiffs in that case because the plaintiffs pushed for a "rigid formula" that would have established a presumptively reasonable fee and which "fail[ed] to take into account the totality of the special circumstances applicable to the case at hand." See *Smolen*, 186 Mich App at 297. In *Smith*, too, our Supreme Court emphasized that an attorney-fee award must take into account the particular circumstances of a case. In fact, *Smith* even cited *Smolen* for this very proposition. See *Smith*, 481 Mich at 529, citing *Smolen*, 186 Mich App at 297. And, *Smith* stands for the proposition that the starting point is to be adjusted by pertinent factors at the discretion of the trial court; this is in stark contrast to the starting point at issue in *Smolen*, where the plaintiffs asked this Court to adopt a relatively inflexible and presumptively reasonable starting point, and to declare that they were entitled to certain adjustments, rather than leaving adjustments to the discretion of the trial court. In other words, we find that the "starting point" that was rejected in *Smolen* was much different than the starting point that was adopted in *Smith*. For this reason we decline to read *Smolen* as rejecting the application of the framework that would later be established in *Smith* in cases involving an award of attorney fees under the MCPA.

In addition to finding no authority that would prevent the application of *Smith* in the instant case, we conclude that the purposes of the fee-shifting provisions in the MCPA and the MMWA are best served by applying the *Smith* framework to an award of attorney fees under these statutes. "One of the purposes behind both the [MMWA] and the MCPA is to provide, via an award of attorney fees, a means for consumers to protect their rights and obtain judgments where otherwise prohibited by monetary constraints." *Jordan v Transnational Motors, Inc*, 212 Mich App 94, 97-98; 537 NW2d 471 (1995). The MMWA and MCPA are remedial in nature and must be liberally construed in order to achieve their intended goals. *Price v Long Realty, Inc*, 199 Mich App 461, 471; 502 NW2d 337 (1993). We have recognized that the fee-shifting provisions contained in those statutes "are essential to legal redress in public interest or consumer cases in which the monetary value of the case is often meager." *Lavene*, 266 Mich App at 476. As explained in *Jordan*, 212 Mich App at 98-99:

> In consumer protection as this, the monetary value of the case is typically low. If courts focus only on the dollar value and the result of the case when awarding

---

[15] And, to the extent the holdings of the cases conflict, we would be bound to follow *Smith* over *Smolen*. See *Charles A Murray Trust v Futrell*, 303 Mich App 28, 48-49; 840 NW2d 775 (2013) (this Court is bound by the decisions of our Supreme Court).

attorney fees, the remedial purposes of the statutes in question will be thwarted. Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended.

Still, that is not to say that a court in MCPA or MMWA cases should award the full amount of requested fees. *Id.* at 99. Rather, a court is to consider the usual factors, and "must also consider the special circumstances presented in this type of case." *Id.* In *Jordan*, this Court concluded that the trial court's award of attorney fees was an abuse of discretion where the trial court failed to consider the goals of the MCPA and the MMWA and limited the plaintiff's fees based solely on "the result obtained and the low value of the case." *Id.* at 98.

The remedial nature of the MCPA and the MMWA, along with the policy choices behind awarding attorney fees under these statutes, supports our decision to impose the *Smith* framework in this case. As recognized by this Court in *Jordan*, 212 Mich App at 98, consumer protection cases require a "reasonable return" in order to assure that consumers can retain competent counsel to pursue claims that promise meager monetary returns. Failing to provide this reasonable return to "ordinary consumer complaints" effectively closes the courtroom door on a class of persons to whom the Legislature and Congress expressly sought to provide protection. See *id.* at 98-99. In order to honor the intent of the fee-shifting provisions found in the MCPA and the MMWA in assuring a "reasonable return," we find it prudent to operate under the *Smith* framework, which begins by starting at the product of a reasonable hourly fee and a reasonable number of hours expended, and makes adjustments based on a number of factors. We believe this starting point helps frame the attorney-fee award in the proper context and helps avoid focusing too heavily on the results obtained and/or the low value of the case. The approach utilizes a reasonable number of hours—not the actual number of hours or a number that encourages a plaintiff's counsel to bill unreasonably based on the promise of an attorney-fee award—as the starting point for the fee analysis and helps shift the focus away from a fee award that is overly dependent on the outcome achieved. In other words, we believe that this approach best comports with the legislatively-sanctioned goal of incentivizing competent counsel to litigate consumer protection cases, while at the same time ensuring that trial courts have appropriate control over the ultimate award of fees. And, just as in *Smith*, we believe that utilizing this approach will lead to more consistency in awards under these consumer protection statutes. See *Smith*, 481 Mich at 531 ("We believe that having a trial court consider [the starting point] will lead to greater consistency in awards."). This is not to say, however, that a trial court should simply award the amount of fees requested by a party, with no critical examination. See *Jordan*, 212 Mich App at 99. Rather, we simply find that the framework set forth in *Smith* is the

most appropriate framework for honoring the remedial purpose of the MCPA and the MMWA and for achieving the goal of awarding a reasonable fee in these types of cases.[16]

## C. THE TRIAL COURT ABUSED ITS DISCRETION

Having determined that the *Smith* framework applies, we next turn our attention to the trial court's award of attorney fees in this case. After reviewing the trial court's award, we find that the court abused its discretion when it awarded $1,000 in costs and attorney fees to plaintiff's counsel. The court gave no consideration to the vast majority of the pertinent factors, and instead appeared to focus myopically on the amount obtained by plaintiff, describing the case as a "nickel and dime" case.[17] This was inconsistent with the remedial goals of the MCPA and the MMWA. See *Jordan*, 212 Mich App at 98 (reversing and remanding for further proceedings when the trial court's only justification for limiting the plaintiff's attorney fees appeared to be the result obtained and the low value of the case). See also *Smolen*, 186 Mich App at 296 (reversing and remanding the trial court's award of attorney fees where the trial court did not consider any of the *Wood* factors). In addition, the court chastised plaintiff's counsel at the end of the hearing for attempting to clarify the record and for filing what it termed "pages and pages of stuff."[18] Further, as noted above, the trial court's ruling appeared to doubt whether plaintiff was even entitled to attorney fees in the first instance, which was incorrect. Accordingly, we are compelled to vacate the trial court's award of attorney fees and to remand for the trial court to employ the proper procedures to the award of attorney fees.

---

[16] In this regard, we note that, as is the case with most fee-shifting statutes, there is a punitive nature to the award of attorney fees under the MCPA and the MMWA. Indeed, although the statutes are designed to protect consumers, the award of attorney fees acts, in some ways, as a penalty against those who have violated the respective acts. In *Smith*, 481 Mich at 527-528, our Supreme Court noted that the "purpose" of the fee-shifting provision of MCR 2.403(O)(6) was to penalize parties who should have accepted a case-evaluation award, but did not. Therefore, to the extent the punitive nature of case-evaluation sanctions was pertinent to our Supreme Court's imposition of the *Smith* framework, we find the same punitive nature present in this case, thereby drawing additional parallels to *Smith* and providing further support for our decision to apply *Smith* in this case.

[17] Our decision—that the trial court abused its discretion—would be the same regardless of whether we applied the *Smith* framework or the traditional multi-factor analysis, given that the court focused solely on the amount of the recovery.

[18] While we make no comment on the reasonableness of the requested fees, we note that plaintiff, as the party requesting attorney fees, bore the burden of establishing that the requested fees were reasonable, i.e., she bore the burden of producing "pages and pages of stuff" to support the requested fees. See *Smith*, 481 Mich at 531. And, our review of the "pages and pages of stuff" reveals that plaintiff filed documents relating to the pertinent factors to be considered in determining a reasonable attorney fee, such as billing records, the Economics of the Law Practice Survey published by the State Bar, as well as documents noting the experience and reputation of plaintiff's counsel.

-14-

## III. CONCLUSION

In conclusion, we vacate the trial court's order awarding $1,000 in attorney fees and costs to plaintiff and remand with directions for the court to follow the framework established in *Smith*. In this regard, the court

> should first determine the fee customarily charged in the locality for similar legal services. In general, the court shall make this determination using reliable surveys or other credible evidence. Then, the court should multiply that amount by the reasonable number of hours expended in the case. The court may consider making adjustments up or down to this base number in light of the other factors listed in *Wood* and MRPC 1.5(a). In order to aid appellate review, the court should briefly indicate its view of each of the factors. [*Smith*, 481 Mich at 537.]

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Patrick M. Meter
/s/ Stephen L. Borrello