*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANNY BURTON,

        Plaintiff-Appellee,

v

STATE OF MICHIGAN,

        Defendant-Appellant.

FOR PUBLICATION
February 24, 2022
9:05 a.m.

No. 356195
Court of Claims
LC No. 20-000019-MZ

Before: CAVANAGH, P.J., and JANSEN and RIORDAN, JJ.

RIORDAN, J.

This case arises under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*. Defendant appeals as of right the judgment of the trial court awarding plaintiff attorney fees of $10,000 under MCL 691.1755(2)(c) of that act.[1] The issue before us is whether the framework set forth in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016), for calculating reasonable attorney fees applies to such fee determinations under the WICA. We conclude that it does. Accordingly, we vacate the trial court's judgment and remand to that court for further proceedings.

## I. BACKGROUND FACTS

In 1987, plaintiff was convicted of first-degree murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, in connection with the shooting death of Leonard Ruffin. He was sentenced to serve terms of life in prison for the murder conviction and two years for the felony-firearm conviction. In 2011, a nonprofit organization that provides investigative support to wrongfully convicted individuals began investigating plaintiff's case. Attorney Solomon Radner assisted the investigation. It was eventually proven that plaintiff is actually innocent of the crimes for which he was wrongfully convicted and, in December 2019, the Wayne Circuit Court entered a stipulated order providing

---

[1] The trial court also awarded plaintiff compensation for his wrongful imprisonment, but that award is not at issue on appeal.

that "Mr. Burton's convictions and sentences in this matter are hereby vacated, and all related charges are hereby dismissed."

In January 2020, plaintiff commenced the instant action under the WICA, which provides that a wrongfully imprisoned individual who satisfies the statutory requirements therein is entitled to compensation from defendant.[2] Radner also represented plaintiff in the WICA action. In June 2020, the Court of Claims entered a stipulated order awarding plaintiff compensation of $1,612,646.28. With regard to statutory attorney fees under MCL 691.1755(2)(c) for a successful WICA plaintiff, the order stated as follows:

> The parties shall submit to the Court a stipulated order concerning reasonable attorney fees and costs under MCL 691.1755(2)(c) within thirty (30) days of the date of entry of this order. If the parties do not present such a stipulated order to the Court within thirty (30) days, this Court shall set this matter for a hearing to determine the amount of reasonable attorney fees and costs under MCL 691.1755(2)(c), and the Court may in its discretion require the submission of legal memoranda in support of the parties' respective positions.

In August 2020, plaintiff filed his motion for reasonable attorney fees of $50,000, the statutory limit under MCL 691.1755(2)(c)(*iii*). In an accompanying brief, plaintiff explained that Radner expended substantial time obtaining his release from prison, but only expended about seven hours on the "WICA case" itself because defendant agreed that he was entitled to compensation. Plaintiff further explained that he and Radner entered into a contingency agreement before the instant action was filed, under which Radner would apparently be entitled to "the lesser of $50,000 or 10% of the total amount awarded" to plaintiff.[3] Plaintiff argued that the trial court should award him $50,000 in attorney fees because the contingency agreement was "reasonable" in light of Radner's efforts to establish his innocence in the underlying criminal case.

Defendant responded that the proper calculation of "[r]easonable attorney fees" under MCL 691.1755(2)(c) requires application of the principles set forth in cases such as *Pirgu* and *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), which essentially provide that such fees are determined by multiplying the reasonable number of hours expended on the case with a reasonable hourly rate, subject to adjustment through consideration of certain relevant factors.[4] Defendant argued that under MCL 691.1755(2)(c), only those hours expended in the WICA action itself were compensable, not the hours expended in the underlying criminal case. Defendant contended that the trial court should deny plaintiff's request for attorney fees in its entirety because he failed to apply the *Pirgu* framework.

---

[2] See MCL 691.1755.

[3] The contingency agreement has not been produced for the record, but Radner represents on appeal that he offered to produce it to the trial court for an in-camera review.

[4] Determining a reasonable attorney fee by multiplying the reasonable number of hours expended on the case with a reasonable hourly rate is known as the "lodestar method." See *Smith*, 481 Mich at 547 (CAVANAGH, J., *dissenting*).

In October 2020, the trial court entered an order allowing plaintiff to produce a record establishing his entitlement to attorney fees:

Plaintiff's counsel has filed a request for attorney fees of 50,000 [sic], citing a contingency fee arrangement with his client. Counsel has declined to attach a billing statement, an affidavit averring the hours invested in this litigation, his customary billing rate, specific years of experience, locality rates, or any information upon which this court may determine a reasonable fee award, other than the existence of a contingency fee agreement. He has not attached even that document. Based upon this filing the Court could exercise its discretion and make no award. However, the Court will allow Plaintiff's counsel to supplement his papers on or before October 17, 2020, with any supplemental responses due by October 27, 2020.

In response, plaintiff filed a supplemental brief that summarily addressed the factors identified by the trial court but only attached minimal supporting documentation to his brief. Defendant again asked the trial court to deny plaintiff's request for attorney fees in its entirety because he failed to satisfy his burden of establishing entitlement to those fees. However, the trial court once again allowed plaintiff an opportunity to produce a record:

Per the Court's October 8th, 2020 Order, plaintiff's counsel was allowed to supplement his papers on or before October 17, 2020, with any supplemental responses due by October 27, 2020. The Court has reviewed the papers filed and finds that the Plaintiff has failed to address the *Lodestar* factor [sic] or present any record of hours expended in this matter despite this court's earlier order. If the Plaintiff fails to address the *Lodestar* factors and offer records of hours expense by Monday, November 16th, 2020, the court will disallow all attorney fees.

Plaintiff promptly filed his second supplemental brief as allowed by the trial court, explaining that a straightforward application of the lodestar method provided for attorney fees of $7,078.50.[5] However, plaintiff argued, the trial court should nonetheless award him attorney fees of $50,000 because Radner's work on the underlying criminal case was a "special and rare circumstance[]." Defendant responded that plaintiff was not entitled to any attorney fees because he consistently failed to meaningfully apply the *Pirgu* framework, or alternatively, that he was only entitled to attorney fees of $1,099.

The trial court ultimately ruled that plaintiff was entitled to attorney fees of $10,000, reasoning as follows:

Plaintiff has been afforded two opportunities to perfect his prayer for a $50,000.00 fee. While plaintiff avers the *Lodestar* factors are inapplicable, he has admitted that using what he, as an officer of the court, states is his $450.00 hourly fee, yields a product of $7,078.50. This would account for approximately 16 hours,

---

[5] Plaintiff identified this number by multiplying the hours that Radner and his staff expended on the WICA action, 15.73, with Radner's requested hourly rate, $450.

(15.73) hours, invested on this matter prior to settlement. Counsel has stated that he believes this is the "rare" and exceptional case warranting an hourly rate of over $3,000.00 per hour or a fee equal at this hourly rate for over seven times the hours actually invested in this case. He has stated that if an evidentiary hearing were held, he could establish the merit on this enhancement. He has not, however, filed a Motion for such a hearing.

This court values the expertise of counsel for both parties. HOWEVER, AN ENHANCEMENT OF THIS MAGNITUDE IS BEYOND RARE, IT IS NEARLY UNPHATHOMABLE [sic]. The court, however, will extend counsel the opportunity to request such a hearing accompanied by a witness list on or before Friday, December 11, 2020, or accept this court's award of $10,000.00.

Plaintiff did not request such a hearing, apparently accepting the attorney fees of $10,000. Defendant, however, moved for reconsideration, arguing that plaintiff artificially inflated the number of hours that Radner worked on the WICA action by repeatedly failing to properly support his request for attorney fees with legal analysis and documentation, thereby extending the litigation. The trial court denied the motion.

Defendant now appeals, arguing that the trial court erred by awarding attorney fees to plaintiff without applying the *Pirgu* framework. According to defendant, plaintiff only is entitled to attorney fees in the amount of $466. Plaintiff has responded, arguing that the *Pirgu* framework does not apply to an award of "[r]easonable attorney fees" under MCL 691.1755(2)(c) and that instead, the contingency agreement between plaintiff and Radner should govern the award.

## II. STANDARD OF REVIEW

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). In addition, "[w]e review a trial court's determination of the reasonableness of requested attorney fees for an abuse of discretion." *Zoran v Twp of Cottrellville*, 322 Mich App 470, 475; 913 NW2d 359 (2017).

## III. ANALYSIS

Before the WICA became effective on March 29, 2017, "people who were wrongfully imprisoned by the state of Michigan had no recourse against it for compensation" because the state was protected by sovereign immunity. *Sanford v Mich*, 506 Mich 10, 15; 954 NW2d 82 (2020). Thus, "[t]he WICA is an express waiver of the state's sovereign immunity." *Id*. In this regard, MCL 691.1753 provides as follows:

An individual convicted under the law of this state and subsequently imprisoned in a state correctional facility for 1 or more crimes that he or she did not commit may bring an action for compensation against this state in the court of claims as allowed by this act.

MCL 691.1755(1) provides that a wrongfully imprisoned individual may recover compensation from defendant by proving the following by clear and convincing evidence:

(a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

(b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.

(c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.

Further, subject to certain exceptions not relevant here, MCL 691.1755(2) provides that a successful plaintiff is entitled to the following compensation:

(a) Fifty thousand dollars for each year from the date the plaintiff was imprisoned until the date the plaintiff was released from prison, regardless of whether the plaintiff was released from imprisonment on parole or because the maximum sentence was served. For incarceration of less than a year in prison, this amount is prorated to 1/365 of $50,000.00 for every day the plaintiff was incarcerated in prison.

* * *

(c) Reasonable attorney fees incurred in an action under this act. All of the following apply to attorney fees under this act:

(*i*) The court shall not award attorney fees unless the plaintiff has actually paid the amount awarded to the attorney.

(*ii*) It is not necessary that the plaintiff pay the attorney fees before an initial award under this act. The court may award attorney fees on a motion brought after the initial award.

(*iii*) The attorney fees must not exceed 10% of the total amount awarded under subdivisions (a) and (b) or $50,000.00, whichever is less, plus expenses.

(*iv*) An award of attorney fees under this act may not be deducted from the compensation awarded the plaintiff, and the plaintiff's attorney is not entitled to receive additional fees from the plaintiff.

"Michigan follows the 'American rule' with respect to the payment of attorney fees and costs." *Haliw v City of Sterling Heights*, 471 Mich 700, 706; 691 NW2d 753 (2005). "Under the

American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id.* MCL 691.1755(2)(c) of the WICA is one such exception, providing that the trial court "shall" award to a successful plaintiff "[r]easonable attorney fees incurred in an action under this act."

In *Smith*, 481 Mich 519, our Supreme Court interpreted MCR 2.403(O)(6)(b), which provided that in certain cases, a party that rejects a case evaluation and receives an unfavorable verdict at trial must pay to the prevailing party "a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation."[6] The lead opinion explained that determining "a reasonable attorney fee" first requires the trial court to multiply a "reasonable hourly rate by the reasonable hours billed [to] produce a baseline figure." *Id.* at 533 (opinion by TAYLOR, C.J.).[7] Next, the Court instructed that the trial court should consider the six factors identified in *Wood v Detroit Automobile Inter-Ins Exch*, 413 Mich 519; 751 NW2d 472 (2008), and the eight factors identified in MRPC 1.5(a), "to determine whether an up or down adjustment is appropriate." *Id.* at 529-531 (opinion by TAYLOR, C.J.).

Eight years later, in *Pirgu*, 499 Mich 269, our Supreme Court considered "whether the framework for calculating a reasonable attorney fee set forth in [*Smith*] applies to attorney fee determinations under MCL 500.3148(1) of the no-fault insurance act." *Id.* at 271.[8] The Court concluded that the *Smith* framework did apply to such determinations, reasoning as follows:

> Although § 3148(1) is phrased differently than MCR 2.403(O)(6)(b), those differences are not material to determining whether the *Smith* framework applies. The plain language of the statute and the court rule both speak in terms of *a reasonable fee*. The operative language triggering the *Smith* analysis is the Legislature's instruction that an attorney is entitled to a reasonable fee. . . . Because the plain language of § 3148(1) speaks in terms of awarding a "reasonable fee," we conclude that the *Smith* framework governing reasonable fee determinations is equally applicable in this context. [*Id.* at 279 (footnotes omitted; emphasis in original).]

Further, the Court distilled the *Wood* and MRPC 1.5(a) factors into a single list to assist trial courts:

---

[6] MCR 2.403 was recently amended to omit this provision.

[7] The lead opinion in *Smith* was authored by CHIEF JUSTICE TAYLOR and joined by JUSTICE YOUNG. JUSTICE CORRIGAN, joined by JUSTICE MARKMAN, concurred with the lead opinion in all but one respect, which does not implicate the present matter before us. Thus, there was no majority opinion of the Court, and CHIEF JUSTICE TAYLOR's opinion is controlling in the instant case.

[8] MCL 500.3148(1) provided that "[a]n attorney is entitled to a reasonable fee . . . in an action for personal or property protection insurance benefits which are overdue . . . if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Id.* at 282.]

In this case, the operative language of MCL 691.1755(2)(c) provides that a successful WICA plaintiff is entitled to "[r]easonable attorney fees under this act." We agree with defendant that the *Pirgu* framework is applicable to this statute.

As explained in *Pirgu*, the triggering operative language for the application of the *Pirgu* framework "is the Legislature's instruction that an attorney is entitled to *a reasonable fee*." *Pirgu*, 499 Mich at 279 (emphasis in original). MCL 691.1755(2)(c) refers to "[r]easonable attorney fees," which is plainly an instruction that an attorney representing a successful WICA plaintiff is entitled to a reasonable fee. It is unlike, for example, MCL 15.271(4) of the Open Meetings Act (OMA), MCL 15.261 *et seq.*, which provides that a successful OMA plaintiff is entitled to "court costs and actual attorney fees."

We have regularly applied the *Pirgu* framework, or its predecessor *Smith* framework, to statutes that refer to "reasonable attorney fees." For example, in *Cadwell v City of Highland Park*, 324 Mich App 642, 655; 922 NW2d 639 (2018), we applied the *Pirgu* framework to MCL 15.364 of the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, which provides that "[a] court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate." Similarly, in *Powers v Brown*, 328 Mich App 617; 939 NW2d 733 (2019), we applied the *Pirgu* framework to MCL 600.2919a(1), which provides that a person damaged by statutory conversion "may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." And in *Kennedy v Robert Lee Auto Sales*, 313 Mich App 277, 294-295; 882 NW2d 563 (2015), we applied the *Smith* framework to MCL 445.911(2) of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*, which provides that "a person who suffers loss . . . may bring an action to recover actual

damages or $250.00, whichever is greater, together with reasonable attorneys' fees."[9] Our conclusion today is consistent with such cases, in which the statutory language "reasonable attorney fees" communicates that the *Pirgu* framework should presumptively be applied unless additional language suggests otherwise.

We acknowledge that MCL 691.1755(2)(c) refers to "[r]easonable attorney fees" that are "incurred," thereby arguably signaling that any fees that are actually incurred by a successful WICA plaintiff are recoverable, assuming that the fees are "reasonable." However, we have applied the *Pirgu* framework to the previous version of MCR 2.114(E),[10] which provided that the trial court may order a party to pay "the amount of the reasonable expenses incurred because of the filing of the [frivolous] document, including reasonable attorney fees." See *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 147-149; 946 NW2d 812 (2019). Thus, the mere fact that MCL 691.1755(2)(c) refers to "[r]easonable attorney fees" that are "incurred" by the successful WICA plaintiff does not preclude application of the *Pirgu* framework.

Plaintiff argues that this case is controlled by *Mich Dep't of Trans v Randolph*, 461 Mich 757; 610 NW2d 893 (2000). We disagree. In that case, our Supreme Court interpreted MCL 213.66(3), which provided that certain successful litigants in a condemnation proceeding were entitled to "reimbursement in whole or in part to the owner by the agency of the owner's reasonable attorney's fees . . . . The reasonableness of the owner's attorney fees shall be determined by the court." See *id*. at 761.[11] Our Supreme Court rejected application of the lodestar method to MCL 213.66(3), explaining that "the focus of the reasonableness determination clearly is on the *owner's* attorney fees." *Id*. at 766 (emphasis in original). *Randolph* is distinguishable from this case because the statute in that case referred to "reimbursement" of "the owner's attorney fees." This language directed the trial court to focus upon the attorney fees specifically incurred and paid by the property owner. See *id*. See also *Smith*, 481 Mich at 537 (opinion by TAYLOR, C.J.) ("In *Randolph*, we specifically noted that MCL 213.66(3) requires consideration of whether actual fees are reasonable, and that this is different from fee-shifting statutes that simply authorize the trial court to award 'reasonable attorney fees' without regard to the fees actually charged."). Here, in contrast, MCL 691.1755(2)(c) does not include language such as "the plaintiff's attorney fees" or "actual attorney fees" to signal that the specific fees actually incurred and paid by the successful WICA plaintiff are the presumptive baseline.[12]

---

[9] MCL 445.911(2) was subsequently amended, but the changes are immaterial to the substance of the statute. See 2020 PA 296.

[10] MCR 2.114 has since been repealed.

[11] MCL 213.66 was amended by 1996 PA 474 and 2006 PA 370.

[12] Plaintiff argues that MCL 691.1755(2)(c) creates a "reimbursement" scheme whereby the successful WICA plaintiff must first pay the agreed-upon attorney fees to his or her counsel, and then counsel must repay those fees to the plaintiff and await an award from the trial court. Thus, plaintiff argues, the agreed-upon attorney fees—so long as they are reasonable—must be awarded by the trial court based upon a round-trip, illusory exchange of funds. We disagree.

-8-

Regardless, plaintiff argues that, for public-policy reasons, the trial court should include an attorney's work on the underlying criminal case in calculating the "[r]easonable attorney fees" awardable to a successful WICA plaintiff under MCL 691.1755(2)(c). Plaintiff acknowledged at oral argument that such an outcome would "ideally" be required by the legislature, but he nonetheless maintains that because the legislature has not clearly done so, we should establish caselaw to that effect. However, as commendable as the efforts of plaintiff's counsel were in righting the wrong committed against plaintiff, a court "may not award attorney fees . . . solely on the basis of what it perceives to be fair or on equitable principles." *Reed v Reed*, 265 Mich App 131, 166; 693 NW2d 825 (2005). This type of policy consideration is for the legislature to make, not the judiciary. Thus, to the extent that plaintiff's policy argument would require us to reject the *Pirgu* framework, we decline to adopt it and leave it to the legislature to do so if it chooses.

We note that plaintiff conceded, in both the trial court and this Court, that the italicized language "[r]easonable attorney fees *incurred in an action* under this act" contemplates only hours expended in the WICA action itself, not the underlying criminal case. For example, in his October 16, 2020 brief, plaintiff stated as follows: "Plaintiff readily admits, and included in his original motion, that the attorney fees he would be entitled to under a strict *Lodestar* analysis, will be extremely limited to only the work done on the WICA case itself." Similarly, in his brief on appeal, plaintiff states as follows: "Counsel and his staff worked for just shy of five years on securing Mr. Burton's release . . . **all of which** was before the filing of the instant WICA action, and therefore **none of which** is time spent on the instant WICA action for purposes of attorney fees." (Emphasis in original.) Therefore, as plaintiff concedes, we will consider the "reasonable number of hours" expended in the WICA matter before us, for the purposes of the *Pirgu* framework, which does not include any hours plaintiff's counsel expended in the underlying criminal case. Based upon plaintiff's position, whether WICA, as written, encompasses these types of fees is left for another day.

---

While we acknowledge that MCL 691.1755(2)(c) is not a model of clarity, we do not interpret that provision as requiring a symbolic exchange between the successful WICA plaintiff and his or her counsel. Instead, the most reasonable understanding of MCL 691.1755(2)(c) is that the trial court must first identify the amount of "[r]easonable attorney fees" under the *Pirgu* framework to which the plaintiff is entitled. Then, under MCL 691.1755(2)(c)(*i*), the plaintiff must pay that amount to his or her counsel. Once the plaintiff does so, the trial court affirmatively awards that amount to him or her under MCL 691.1755(2)(c). In other words, while plaintiff is correct that MCL 691.1755(2)(c) requires reimbursement, the reimbursement is for "[r]easonable attorney fees" under WICA, not actual attorney fees that are "reasonable" as determined elsewhere by the plaintiff and his or her counsel.

This scheme ensures that the plaintiff receives precisely the amount of compensation for the wrongful imprisonment to which he or she is entitled under the WICA regardless of attorney fees incurred elsewhere. The plaintiff cannot receive even a temporary windfall from the award of attorney fees because those fees must first be paid to counsel under MCL 691.1755(2)(c)(*i*). And, the plaintiff cannot suffer a reduction in compensation because, under MCL 691.1755(2)(c)(*iv*), "[a]n award of attorney fees under this act may not be deducted from the compensation awarded the plaintiff, and the plaintiff's attorney is not entitled to receive additional fees from the plaintiff."

Having concluded that the *Pirgu* framework applies to an award of "[r]easonable attorney fees" under MCL 691.1755(2)(c), we further conclude that the trial court abused its discretion by awarding plaintiff $10,000 in attorney fees without applying the *Pirgu* framework in its order. As such, further proceedings in the Court of Claims are therefore warranted. See *Pirgu*, 499 Mich at 282 ("In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors."). Application of that framework, as the trial court implicitly recognized in its earlier orders, requires consideration of "the reasonable hourly rate customarily charged in the locality for similar services," "the reasonable number of hours expended in the case to arrive at a baseline figure," and the eight-factor list identified in *Pirgu*. See *id*. at 281-282. Consequently, on remand, the trial court should multiply the reasonable hourly rate charged in the locality for similar services by the reasonable number of hours that Radner expended in the WICA action to reach a baseline figure, and then expressly consider the *Pirgu* factors to determine whether an increase or decrease from the baseline figure is warranted. In addition, the trial court may consider "additional factors" in its discretion. See *id*. at 282.

## IV. CONCLUSION

The *Pirgu* framework applies to an award of attorney fees under MCL 691.1755(2)(c) in the matter before us and the trial court abused its discretion by awarding attorney fees to plaintiff without an express application of that framework. Accordingly, we vacate the judgment of the trial court awarding plaintiff $10,000 in attorney fees, and remand to that court for further proceedings consistent with our opinion.[13] We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kathleen Jansen

---

[13] Defendant argues that we should decide the amount of attorney fees to which plaintiff is entitled on our own accord. However, given the novel legal issues involved in this case, we conclude that a remand to the trial court is more appropriate.