HEAD v BENJAMIN RICH REALTY COMPANY

1. Vendor and Purchaser—Land Contracts—Rescission—Jury.

    Rescission is an equitable action that should not be tried before a jury; however, an action to recover money paid on a land contract was properly tried before a jury where, prior to trial, rescission was a *fait accompli*.

2. Equity—Defenses—Laches.

    Laches is an equitable defense and is inapplicable to a suit at law.

3. Principal and Agent—Vendor and Purchaser—Realtors—Listing Agreements—Question of Fact.

    In a dispute as to agency, a question of fact is present for the jury if there is any testimony tending to establish agency; therefore, where alleged misrepresentations were made by a realtor, the jury could properly find that the vendors were liable where the vendors had entered into a listing agreement with the realtor, the vendors had engaged the realtor to find a buyer, and the record showed that the realtor was acting on behalf of the vendors both prior to and at the time of purchase, even though the realtor had made a management agreement with the vendees after the vendees acquired possession of the property.

4. Fraud—Actionable Fraud—Elements.

    The general rule is that to constitute actionable fraud, it must

References for Points in Headnotes

[1] 55 Am Jur, Vendor and Purchaser §§ 584, 593.
[2] 27 Am Jur 2d, Equity § 152.
    Laches as precluding cancelation of or other relief against release for personal injuries. 34 ALR2d 1314.
[3] 3 Am Jur 2d, Agency § 17 *et seq.*
[4] 37 Am Jur 2d, Fraud and Deceit § 12.
[5] 4 Am Jur 2d, Appeal and Error § 252.
[6] 5 Am Jur 2d, Appeal and Error §§ 624–627.
    Counsel's appeal in civil case to self-interest of jurors as taxpayers, as ground for mistrial, new trial, or reversal. 33 ALR2d 442.
[7] 55 Am Jur, Vendor and Purchaser §§ 593, 595.
[8] 55 Am Jur, Vendor and Purchaser § 57 *et seq.*

appear that defendant made a material representation; that it was false; that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; that he made it with the intention that it should be acted upon by plaintiff; that plaintiff acted in reliance upon it; and that he thereby suffered injury.

5. APPEAL AND ERROR—DEFENSES—RES JUDICATA—WAIVER—PRESERVING QUESTION.

The defense of res judicata is waived where defendants neither pled this defense in a timely fashion nor filed a motion for accelerated judgment on this ground; an assertion of this defense in a motion for judgment notwithstanding the verdict comes too late to preserve this issue for appellate review.

6. APPEAL AND ERROR—FINAL ARGUMENT—PRESERVING QUESTION.

Alleged denial of a fair trial because plaintiffs' counsel referred in his final argument to facts not in evidence and made other remarks that were prejudicial is an issue that has not been preserved for appeal where no objection was articulated, no request was made for a curative instruction, and the argument was not so prejudicial as to render a curative instruction ineffective.

7. VENDOR AND PURCHASER—LAND CONTRACTS—RESCISSION—FRAUD—DAMAGES.

A vendee may elect to rescind a transaction because of the vendor's fraud, and he will be entitled to recover the purchase price with interest and such additional damages suffered by reason of losses and expenses incurred which were the natural and reasonable consequences of the fraud.

8. FRAUD—VENDOR AND PURCHASER—MISREPRESENTATION—CODE VIOLATIONS—INCOME.

The plaintiff met his burden of proof in an action for fraudulent misrepresentation in the sale of property where the record showed that the defendants had made material misrepresentations as to the lack of city and health code violations, and as to the amount of income the plaintiffs would realize, and where plaintiffs relied upon defendants' representations and suffered injury thereby.

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 June 10, 1974, at Detroit. (Docket No. 16045.) Decided September 10, 1974. Leave to appeal applied for.

Complaint by James W. Head and Sarita C. Head against Benjamin Rich Realty Company, Leander R. Rivard and Ada M. Rivard to recover money paid on a land contract. Judgment for plaintiffs. Defendants Leander R. Rivard and Ada M. Rivard appeal. Affirmed.

*Eli Friedman,* for plaintiffs.

*Yoe, Casey & Moore,* for defendants Leander R. Rivard and Ada M. Rivard.

Before: J. H. GILLIS, P. J., and ALLEN and EL-LIOTT,* JJ.

ALLEN, J. On July 26, 1972, a jury awarded plaintiffs $20,000, and found for defendants on their counterclaim in the amount of $400. Defendants appeal from the judgment entered pursuant to the jury's verdict, and no cross-appeal has been made on the award to defendants.

Before discussing the numerous allegations of error raised by defendants, it will be necessary to examine the facts out of which the instant suit arose. Some time previous to September 20, 1969, plaintiffs responded to a newspaper advertisement of the Benjamin Rich Realty Company, seeking to invest some money in an apartment building. The plaintiffs visited 3 or 4 buildings, and were then shown a brochure advertising the 50-unit apartment building located at 8620 Epworth in the city of Detroit. Plaintiffs visited the above premises twice, and on September 20, 1969, offered to purchase this building for $115,000. Defendants accepted this offer on September 21, 1969, and the closing was held at the Benjamin Rich office on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

October 7, 1969, at which time the parties executed a land contract.

In the brochure advertising the apartment building, the monthly income was set forth as approximately $3,900. The gross annual income was listed as $46,800, with total expenses listed at $19,077. Thus, the net annual income was represented as $27,723, a figure which plaintiffs repeatedly stated they relied upon in their decision to purchase the above property. The brochure stated, "the above information was furnished us by the vendor of the property. We believe it to be correct. We do not warrant it."

In the purchase agreement, it was stated, "seller guarantees against city and health violations of record as of date of acceptance". On the day of closing, plaintiffs once again visited the premises, and were shown some apartments which were in need of some serious repairs. Some of the rooms needed painting, new flooring and plastering, and plaintiffs were told, "now that you bought it you might as well see it all and become familiar with it".

Plaintiffs made their last monthly payments to defendants in May of 1970. On July 8, 1970, plaintiffs' attorney wrote to defendants, and referred to the portion of the purchase agreement in which the seller guaranteed against city and health violations as of the date of purchase. On that date, there were supposedly a number of electrical violations, and counsel said that there had been a breach of contract. The letter further stated "by means of this letter Mr. and Mrs. Head are rescinding the contract and requesting back any and all monies paid you".

July 13, 1970, defendants wrote plaintiffs' attorney expressing their surprise at the tone in the

above letter. Defendants indicated that on June 15, 1970, Dr. Head had called defendants and advised them of the electrical violations. In their letter, defendants stated that Klein Electric Company had been retained on July 6, 1970, that a permit had been issued by the city of Detroit on July 10, and that the work had been performed. Testimony was presented by Mr. Rivard and by the electrician that this work was performed. The cost of the permit was $60, and the cost of the specific electrical repairs was $55. Defendants offered to plaintiff a six-month moratorium on the principal but insisted upon prompt payment of the interest and taxes.

July 17, 1970, plaintiffs' counsel replied to defendants. He explored the possibility of defendants discounting their land contract and plaintiffs paying defendants in cash pursuant to that discount.

July 21, 1970, defendants replied to plaintiffs' attorney, stating that they had no desire to have their equity in cash. However, they stated that if plaintiffs wanted to liquidate, they would accept a total of $98,147.44.

July 27, 1970, plaintiffs' attorney wrote to defendants, stating that they had misunderstood his previous letter. Stating that defendants were not responsive to plaintiffs' offer, the attorney indicated that a rescission suit would be started within ten days. On September 1, 1970, plaintiffs filed their first complaint. After Benjamin Rich Realty Company was named a party, plaintiffs filed an amended complaint February 2, 1971. In the course of trial, plaintiffs settled their claim against Rich for $3,000.

During the period in which the above correspondence was being exchanged, the tenants who resided within the apartment building participated.

in a rent strike on the grounds that their living conditions were such as to justify the nonpayment of rent. Some of the tenants testified at trial as to these conditions. They included the presence of mice, rats, and roaches, the failure of the management to provide heat, dirty hallways, the lack of sufficient water pressure and hot water for bathing, sagging floors, and a general state of disrepair, especially as far as the plaster was concerned. While no specific "electrical violations" were enumerated, some testimony was presented as to the lack of sufficient lighting, particularly in the hallways and near the outside entrance. This rent strike was mentioned in the July 8, 1970 letter to defendants. During the course of this strike, Benjamin Rich Realty Company, which had agreed to manage the premises for plaintiffs, advised plaintiffs that it would no longer be able to continue management of the property as of August 17, 1970.

On August 5, 1970, defendants filed and presented plaintiffs with a "notice of intention to forfeit a land contract". Subsequent thereto, plaintiffs received a "notice of forefeiture of land contract", and on September 22, 1970, the Rivards filed a complaint in the Detroit Common Pleas Court to recover possession under the land contract. The Heads replied that they owed no money to Rivard, and as an affirmative defense alleged that the cost of repairing the electrical violations exceeded the amount of money the Heads allegedly owed to the Rivards. In any event, on October 13, 1970, the Rivards were granted relief, and plaintiffs were given 90 days in which to redeem their interest in the land contract. Plaintiffs chose not to exercise their rights of redemption, and on December 22, 1970, executed a quit-

claim deed to defendants, and advised the tenants of 8620 Epworth to pay their rent to the Rivards. The Rivards subsequently sold the building to another purchaser for $100,000, although as of the date of the instant trial that purchaser was in default.

Defendants first argue that the instant suit was an equitable action that had to be decided by the trial court without a jury. While defense counsel stated both before and after the jury instructions that this action was one for the court to decide, we note that defendants had demanded a jury trial. While plaintiffs paid the jury trial fee, defendants voiced no objection to this matter being tried by a jury at either the pre-trial conference or the first day of trial.

Defendants' argument is premised on the idea that plaintiff, by instituting the instant action, sought to rescind the land contract, and that an action for rescission is purely equitable in nature. We acknowledge the general rule that matters which are purely equitable in nature should not be tried before a jury. *Farwell v Neal,* 40 Mich App 351, 353–354; 198 NW2d 801 (1972). Matters which have been traditionally equitable in nature are generally tried before the court without a jury. See *Fredal v Forster,* 9 Mich App 215, 227–228; 156 NW2d 606 (1967), and cases cited therein. However, this general rule has no application to the instant case since, prior to trial, rescission was a *fait accompli.*

During the course of trial, a question arose as to whether counsel for the plaintiffs had rescinded the contract on July 8, 1970. Defendants' counsel stated:

"Your honor, I would go along with stating that the plaintiff attempted to rescind, gave notice of this intent

to rescind and there was, in fact, a rescission at that time."

Thereafter, the letter of July 8, 1970, was read into the record. Also, defendants had obtained in October of 1970, a judgment in the common pleas court, entitling defendants to possession of the property. In fact, on December 20, 1970, plaintiffs, by means of a quitclaim deed, returned possession of the property to defendants. Plaintiffs' amended complaint, filed in February of 1971, prayed for $25,000 in damages, and alleged that plaintiffs had previously rescinded the contract and that by means of that complaint plaintiffs were rescinding the contract.

According to 55 Am Jur, Vendor and Purchaser, § 546, p 941:

> "[E]quity will not take jurisdiction of an action to recover money paid on a contract and to obtain rescission or cancellation, or both, where it appears that neither rescission nor cancellation by the court is necessary, as *where there has been rescission by act of the parties and there is no instrument which needs to be surrendered up for cancellation.*" (Emphasis supplied.)

Admittedly, plaintiffs' amended complaint confused the issue by stating both that the contract had previously been rescinded and that by means of the amended complaint it was being rescinded. However, the facts are that defendants had, previous to the filing of plaintiffs' amended complaint, obtained possession of the property. Plaintiffs, seeking to recover what they had paid to defendants, maintained an action at law. See *Barke v Grand Mobile Homes Sales,* 6 Mich App 386, 390–391; 149 NW2d 236 (1967), and cases cited therein. See also *Mock v Duke,* 20 Mich App 453, 455; 174 NW2d 161 (1969). In view of the circumstances

present in this case, and in light of the principles discussed in the above authorities, we find that the instant suit was properly tried before a jury.

Defendants' argument that plaintiffs' recovery should have been barred by laches is without merit. As noted in *Tray v Whitney,* 35 Mich App 529, 533; 192 NW2d 628 (1971), "laches is an equitable defense". The instant suit was one at law, and thus the defense of laches would be inapplicable. For one to successfully assert the defense of laches, it must be shown that there was a passage of time combined with some prejudice to the party asserting the defense of laches. 35 Mich App 529, 534–536. See also *Detroit v General Food Corp,* 39 Mich App 180, 188; 197 NW2d 315 (1972). One attempting to avoid the application of laches must "promptly disaffirm" the contract and "seasonably assert" his rights upon discovery of the alleged fraud. *Livingston v Krown Chemical,* 50 Mich App 153, 158–159; 212 NW2d 775 (1973).

Testimony was presented that indicated that plaintiffs first learned of the electrical violations during the summer of 1970. Apparently, plaintiffs attempted to recover some rent owed by the tenants in the building, and as a defense the tenants alleged that the conditions of the building were such as to excuse the payment of rent. It was at this time that the tenants were on a rent strike. While much of the testimony of the tenants in the instant case related to conditions other than electrical problems, the record does show that the plaintiffs asserted their rights promptly after becoming aware of said violations. Plaintiffs, through counsel, notified defendants on July 8, 1970. We also find that defendants were not prejudiced by the actions of plaintiffs. Defendants had purchased the property for $100,000, and after obtaining

possession from plaintiffs, resold the property for $100,000. Defendants' assertion that the building was worth $180,000 must be viewed in light of the above prices and the fact that plaintiffs purchased the property for $115,000.

Defendants further argue that an agency relationship had been established between plaintiffs and the Benjamin Rich Company, and that Rivard should not be held responsible for any alleged misrepresentations made by the realtor. Generally, in a dispute as to the question of agency, if there is any testimony tending to establish agency, a question of fact is present for the jury to determine. *Kwasny v Driessen,* 42 Mich App 442, 446–447; 202 NW2d 443 (1972), and cases cited therein. See also *Van Pelt v Paull,* 6 Mich App 618, 623–624; 150 NW2d 185 (1967), in which the court referred to 3 Am Jur 2d, Agency, § 21, p 430, in which it is stated, among other things, "the question is to be determined by the fact that one represents and is acting for another * * * ".

An examination of the record reveals that Benjamin Rich Realty Company was acting on behalf of the Rivards both prior to and at the time of purchase. In its pleadings, the real estate company stated that it was Rivards' agent, and the pre-trial statement of January 28, 1972, contains the admission that the realtor was acting as Rivards' agent. While plaintiffs and Rich had an agreement by which Rich was to manage the apartment buildings, plaintiffs and Rich did not effectively begin their association until after plaintiffs had acquired possession of the property. Previous to the purchase of the property, one of Rich's employees had entered into a "listing agreement" with Leander Rivard. Rivard, owner and seller of the property, engaged Rich as Rivard's broker to find a buyer.

This case focused upon defendants-sellers' alleged fraudulent inducement of plaintiffs to purchase the property. During the course of these negotiations, Rich represented the sellers, and defendants' argument is without merit.

Defendants next argue that the existence of various electrical problems was insignificant, that plaintiffs failed to prove that they suffered any loss as a result of such problems, that plaintiffs had failed to present evidence to justify their reliance upon defendants, and that in fact plaintiffs had failed to present evidence of any fraudulent misrepresentation on the part of defendants.

The question in this case is whether or not plaintiffs were induced to purchase the property by reason of defendants' fraudulent representations. Plaintiffs had the burden of proof to establish the essential elements of their cause of action. *Farida v Zahar,* 50 Mich App 137, 142; 212 NW2d 739 (1973), quoting from *Papin v Demski,* 17 Mich App 151, 154–155; 169 NW2d 351, 353 (1969), said:

"The general rule is that to constitute actionable fraud it must appear: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

See also *Mesh v Citrin,* 299 Mich 527, 537; 300 NW 870 (1941). Testimony was presented to support plaintiffs' contention that they suffered a loss as a result of defendants' representations. Plaintiffs failed to realize the income represented in the seller's brochure, and plaintiffs stated repeatedly that they relied upon this brochure and the repre-

sentations contained therein in the course of deciding to purchase the property. Mr. Rivard testified that he knew of the electrical violations, but chose to enter into a purchase agreement which stipulated that the seller had guaranteed against such violations. We have viewed the evidence in a light most suitable to the plaintiff, the party against whom defendants' motion for directed verdict was made (assuming *arguendo,* in light of the ambiguous record, that such a motion was made). *Kupkowski v Avis Ford, Inc,* 51 Mich App 668, 670; 215 NW2d 767 (1974). There was evidence sufficient to uphold the jury's findings, and our Court will not disturb that determination.

Defendants have argued that the October, 1970 judgment in common pleas court, in which it was determined that defendants were entitled to possession of the property, is res judicata as far as the instant suit is concerned, and that plaintiffs' cause of action should have been barred thereby. Defendants failed to plead this defense in a timely fashion, and defendants did not file a motion for accelerated judgment on this ground. GCR 1963, 116.1(5). We find that the defense of res judicata has been waived by defendants. *Hudson v Lindsay,* 13 Mich App 671, 676; 164 NW2d 731 (1968), *reversed on other grounds,* 383 Mich 126; 174 NW2d 822 (1970). Defendants' belated assertion of this defense in paragraph 1(j) of their motion for judgment notwithstanding the verdict came too late to preserve this issue for appellate review.

Likewise, the argument that plaintiffs' counsel referred in his final argument to facts not in evidence and made other remarks that were so prejudicial as to deny defendants a fair trial has not been preserved for appellate review. Before presenting his argument on defendants' counter-

claim, counsel stated, "I am reluctant to interrupt Mr. Friedman (plaintiffs' counsel), but I think I should be entitled—". The trial court said "Can't do it". We do not view this as an articulated objection to plaintiffs' allegedly prejudicial argument. Even if that statement could be viewed as an objection, defense counsel made no request for a curative instruction. Thus, this issue is not properly before our Court. *State Highway Comm v Westerman,* 52 Mich App 623, 627; 217 NW2d 907 (1974). We have examined the closing argument at issue, and have determined that it "was not so prejudicial as to render a curative instruction ineffective". 52 Mich App 623, 627.

Again misconstruing the nature of plaintiffs' complaint, defendants argue that plaintiffs only requested rescission and that the trial court committed reversible error in admitting evidence of plaintiffs' expenses incurred in the operation of the apartment building. Defendants have also argued that the trial court erred in instructing the jury on this point.

As indicated earlier, plaintiffs' complaint prayed for damages. As indicated in 7 Callaghan's Michigan Civil Jurisprudence, Damages, § 38, p 277, a vendee may elect to rescind a transaction because of the vendor's fraud, and will be:

"entitled to what he paid as the purchase price, with interest and such additional damages as he may have suffered by reason of losses and expense incurred in that connection which were the natural and reasonable consequences of the fraud perpetrated."

See also *Mock v Duke,* 20 Mich App 453, 455–456; 174 NW2d 161 (1969). No error was committed in allowing the introduction of evidence of plaintiffs' repair expenses, and the trial court's instructions

on this point were correct. The jury awarded plaintiffs $20,000, although plaintiffs had paid defendants a net down payment of $14,248.16 plus $9,919 in monthly payments for a total of $24,167.16 and, in addition, had incurred substantial repair obligations. In view of the jury's award, it is clear that defendants were not prejudiced by the introduction into evidence of expenses totaling $12,121.83. GCR 1963, 529.1.

Finally defendants argue that the jury's verdict was against the great weight of evidence. At the outset, we note that defendants made a motion for new trial, and thus this issue is properly before our Court. *Arnsteen v US Equipment Co,* 52 Mich App 177, 179; 217 NW2d 61, 62 (1974).

*Farida v Zahar, supra,* and *Mesh v Citrin, supra,* contain a discussion of the elements comprising an action for fraudulent misrepresentation. We have examined the record, and have determined that defendants made material representations as to both the lack of city and health violations and as to the amount of income which plaintiffs would realize. Testimony was presented which indicated that defendants knew of violations, and that defendants had never enjoyed the amount of income as represented in the brochure shown plaintiffs. While Mr. Rivard said that he had never told the Benjamin Rich Company that the figures in the brochure were correct, he stated that they were "approximately" correct, and must have known that this brochure would be shown to plaintiffs. Plaintiffs repeatedly testified that they acted in reliance upon these figures and upon the assertion that there were no city and health violations. It is clear that plaintiffs suffered injury, and we find that the verdict was not against the great weight of evidence. Appellate courts are generally reluc-

tant to substitute their judgment for that of the jury. *Mesh v Citrin,* 299 Mich 527, 538–539; 300 NW 870 (1941). We decline to do so here, and find that there is sufficient evidence from which the jury could determine that plaintiff had met his burden of proof. It has been noted " * * * that some lawsuits are filed without any clear theory of liability and arrive in the appellate courts with muddled records". Glavin, *Business Associations,* 20 Wayne L Rev 261 (1974). Despite the somewhat confused and "muddled" atmosphere which seemed to characterize the proceedings below, we find that the trial court was correct in denying defendants' motion for a new trial and in upholding the award in favor of plaintiffs.

Affirmed, costs to appellees.

All concurred.