*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA MCCALLUM,

    Plaintiff-Appellee/Cross-Appellant,

v

M 97 AUTO DEALER, INC.,

    Defendant-Appellant/Cross-Appellee.

FOR PUBLICATION
September 30, 2025
2:43 PM

No. 367630
Macomb Circuit Court
LC No. 2022-002860-NZ

Before: K. F. KELLY, P.J., and O'BRIEN and ACKERMAN, JJ.

ACKERMAN, J.

" 'Anyone who's buying a second-hand car, the first thing he wants to know is how many miles it's done. Right?' " Dahl, *Matilda* (New York: Viking Kestrel, 1988), p 23. The Michigan Legislature certainly agrees. To protect used-car buyers from odometer-related deception, it enacted MCL 257.233a, which mandates specific mileage disclosures and imposes treble damages and fee-shifting when a seller violates the statute with intent to defraud.

Few appellate cases have construed the statute, but in this case defendant appeals the trial court's determinations that it violated the statute and acted with fraudulent intent, as well as its decision to treble a portion of plaintiff's recovery. Plaintiff cross-appeals, asserting that the court applied the treble-damages provision too narrowly and also improperly reduced her attorney fee award. We affirm the trial court's findings of liability, fraudulent intent, and treble damages, but vacate its attorney fee award and remand for reconsideration under the proper legal framework.

## I. BACKGROUND

In January 2021, plaintiff Jessica McCallum was living in Colorado and searching for a used Toyota Sienna priced between $12,000 and $14,000. She enlisted the help of her father, Kevin McCallum, who lived in Michigan. The plan was for him to locate a suitable vehicle, after which she would fly to Michigan and drive it back to Colorado.

That same month, Kevin found an online advertisement posted by defendant for the vehicle at issue, which stated that it had 71,000 miles. Although the initial plan was for Kevin to purchase the vehicle and then transfer it to plaintiff, she ultimately decided to buy it directly to simplify the

-1-

transaction. That required her to provide a copy of her driver's license, which she photographed and sent to Kevin. Kevin negotiated a purchase price of $13,000, signed various documents at the dealership, and drove the vehicle home.

A few days later, plaintiff emailed defendant to ask when she would receive documents to finalize the purchase. Defendant's sales manager responded that the documents had already been signed and submitted to the Michigan Secretary of State. Plaintiff then flew to Michigan and drove the vehicle back to Colorado. When she registered the vehicle in Colorado, the paperwork revealed what the odometer had concealed: The title disclosed that the odometer reading was "not actual mileage." The vehicle had in fact traveled more than 200,000 miles—far beyond what plaintiff believed when she agreed to the purchase.

Plaintiff contacted defendant seeking to return the vehicle. Defendant initially attempted to auction it on her behalf but was unsuccessful. Defendant then offered to repurchase the vehicle for $12,000, but plaintiff insisted on payment via wire transfer or cashier's check, which defendant declined to provide. Plaintiff ceased using the vehicle shortly thereafter.

Plaintiff filed suit on October 12, 2021. Her complaint asserted claims for "Fraud in the Inducement and/or Misrepresentation," "Breach of Warranty of Title," "Revocation of Acceptance Pursuant to MCL 440.2608 and/or Damages Pursuant to MCL 440.2715(2)," "Breach of Express Warranties," "Breach of Implied Warranty of Merchantability," "Liability Under Magnuson-Moss Warranty Act (15 USC §2301 et seq)," "Violation of MCLA 445.901, et. seq. (Michigan Consumer Protection Act)," "Violation of Motor Vehicle Code,"[1] "Violation of Motor Vehicle Information and Cost Savings Act (49 USC 32701, *et seq*)," "Negligence," and "Exemplary Damages."

In March 2023, plaintiff moved for partial summary disposition under MCR 2.116(C)(10) on her claims under the Michigan Consumer Protection Act, the Michigan Vehicle Code, and the federal odometer law. She argued that defendant had violated MCL 257.235(1) and MCL 257.233a(3) by failing to provide proper documentation of the vehicle's mileage. The trial court granted summary disposition under the Michigan Vehicle Code, concluding that defendant failed to satisfy its obligations, but found a question of fact remained as to whether defendant intentionally withheld information from plaintiff.

Following this partial judgment, plaintiff moved for "Election of Remedies, Entry of Judgment Pursuant to Election and to Set Matter for Evidentiary Hearing as to Plaintiff's Statutory Damages, Costs and Attorney Fees." In it, she elected rescission of the contract of sale and sought entry of judgment to that effect, along with treble damages, costs, and attorney fees under MCL 257.233a(15). Her claimed damages included the $13,000 purchase price of the vehicle, which she sought to have trebled, and $38,861.90 in attorney fees.

---

[1] The complaint alleged violations of various provisions of what is commonly—but incorrectly—called the Motor Vehicle Code. The statute is properly titled the Michigan Vehicle Code. See MCL 257.923.

The parties stipulated to an evidentiary hearing. At that hearing, they presented evidence on whether defendant deliberately misled plaintiff and her father during the transaction. The trial court found that defendant acted with the intent to mislead. It ordered rescission of the sale, directed defendant to return the $13,000 purchase price, and required it to retrieve the vehicle from plaintiff. It also trebled plaintiff's additional expenses of $3,489.80, awarding her $10,469.40 in addition to the return of the purchase price. The court further ordered $30,000 in attorney fees, which was less than the amount plaintiff had requested.

Defendant now appeals, challenging the trial court's findings that (1) defendant violated the Michigan Vehicle Code, (2) defendant acted with fraudulent intent, and (3) any portion of plaintiff's recovery should have been trebled. On cross-appeal, plaintiff contends that the trial court erred in declining to treble the full amount of her recovery, including the purchase price, and reducing her requested attorney fee award.

## II.  DEFENDANT'S CONDUCT UNDER THE MICHIGAN VEHICLE CODE

### A.  MICHIGAN'S ODOMETER REQUIREMENTS

The Michigan Vehicle Code imposes specific requirements for disclosing a vehicle's mileage when title is transferred. The statute provides:

> [I]f the owner of a registered motor vehicle transfers the owner's title or interest in that vehicle, the transferor shall present to the transferee before delivery of the vehicle, written disclosure of odometer mileage by means of the certificate of title or a written statement signed by the transferor including the transferor's printed name, containing all of the following:
>
> (a) The odometer reading at the time of transfer, not including the tenths of a mile or kilometer.
>
> * * *
>
> (d) The transferee's name and current address.
>
> * * *
>
> (f) A reference to this section and comparable federal law, and a statement that failing to complete the title or form or providing false information may result in civil liability and civil or criminal penalties being imposed on the transferor.
>
> (g) One of the following:
>
> (*i*) A statement by the transferor certifying that to the best of the transferor's knowledge the odometer reading reflects the actual mileage of the vehicle.
>
> (*ii*) If the transferor knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit, a statement to that effect.

(*iii*) If the transfer [sic][2] knows that the odometer reading differs from the mileage and the difference is greater than that caused by odometer calibration error, a statement that the odometer reading does not reflect the actual mileage and should not be relied on. This notice must include a warning notice to alert the transferee that a discrepancy exists between the odometer and the actual mileage.

(h) Space for the signature and printed name of the transferee, and the date of presentation to the transferee. [MCL 257.233a(1).]

In short, mileage must be disclosed at the time of title transfer through either the certificate of title or a written statement that identifies the odometer reading, the transferee, and the transferor's assessment of the mileage's accuracy.

Additional provisions ensure that the required communication is properly documented:

A dealer selling or exchanging vehicles required to be titled under this act shall present the certificate of title or written statement and any reassigned titles in the dealer's possession to the transferee. The transferee or the transferee's agent shall inspect, print the transferee's or transferee's agent's name on, sign, and date the certificate or statement and return it to the transferor for submission to the secretary of state . . . . A person shall not sign an odometer disclosure statement as both the transferor and transferee in the same transaction. [MCL 257.233a(3).]

The statute also expressly prohibits odometer tampering:

A person shall not alter, set back, or disconnect an odometer; cause or allow an odometer to be altered, set back, or disconnected; or advertise for sale, sell, use, install, or cause or allow to be installed a device which causes an odometer to register other than the actual mileage driven. [MCL 257.233a(6).]

As this Court has recognized, "[t]he purpose of the odometer statute requirements is to prevent fraud upon the buyer." *Whitcraft v Wolfe*, 148 Mich App 40, 54; 384 NW2d 400 (1985).

To further that purpose, the statute provides a civil enforcement mechanism tied to fraudulent conduct:

A person who, with intent to defraud, violates any requirement under subsection (1) or (6), or a dealer that fails to retain for 5 years each odometer mileage statement the dealer receives and each odometer mileage statement furnished by the dealer upon the sale of a vehicle, is liable in an amount equal to 3 times the amount of actual damages sustained or $1,500.00 whichever is greater,

---

[2] The statute uses "transfer" here, but context makes clear that this is a scrivener's error and should read "transferor."

and in the case of a successful recovery of damages, the costs of the action together with reasonable attorney fees. [MCL 257.233a(15).]

Both parties treat MCL 257.233a(15) as creating an independent cause of action. It is not clear that it does when a plaintiff seeks to recover treble damages. A plausible reading is that once a plaintiff recovers under another recognized legal theory, damages are then trebled. For example, in *Whitcraft*, 148 Mich App at 45-47, the plaintiff brought a fraud claim against the dealership. Because neither party raises the issue here, we need not resolve it.

Defendant raises two arguments under the statute. First, it contends that it complied with the disclosure requirements under MCL 257.233a(1). Second, it denies acting "with intent to defraud" under MCL 257.233a(15). We find both arguments unpersuasive.

## B. DEFENDANT'S DISCLOSURE OBLIGATION

Defendant first challenges the trial court's partial grant of summary disposition under MCR 2.116(C)(10), which we review de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(10), a court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion," and may grant the motion if "there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

Defendant contends that a genuine issue of material fact exists as to whether it orally disclosed the odometer discrepancy to plaintiff's father, Kevin, during the transaction. It further asserts that Kevin acted as plaintiff's "apparent agent" and that any disclosure to him satisfied MCL 257.233a. Plaintiff disputes that Kevin was ever authorized to act as her agent.

Regardless of Kevin's status, defendant's communications with him did not satisfy the statute. Under MCL 257.233a(1) and (3), the required disclosures must be made in a *written statement* and presented to the transferee; oral disclosures are insufficient. Nor do the written materials defendant relies on meet the statute's requirements. The first is the "Application for Title and Registration Statement of Vehicle Sale" submitted to the Michigan Department of State. It does not satisfy MCL 257.233a(1) in several respects, presumably because it is designed to communicate information to the Department of State rather than to provide the consumer protection disclosures the statute requires. Although the form includes an "Odometer Mileage Disclosure" section, the entry is marked with an "X" placed ambiguously between the two boxes—neither clearly within the box for "Actual Mileage" nor the one for "Not Actual Mileage." Even assuming the mark belongs in the "Not Actual Mileage" box,[3] the form lacks the warning language

---

[3] Although the "X" is only partially within the "Not Actual Mileage" box and extends toward the "Actual Mileage" box, no part of the mark falls squarely within the latter. The placement could reasonably be construed as a careless attempt to indicate "Not Actual Mileage."

required by MCL 257.233a(1)(g)(*iii*) that "the odometer reading . . . should not be relied upon."[4] Another document—the "Odometer Disclosure Statement"—asserts that the odometer reading "to the best of my knowledge . . . reflects the actual mileage of the vehicle described below" unless a box is checked. No such box was checked. Defendant also claimed in its trial court briefing that Kevin was shown a Florida certificate of title with the "Not the Actual Mileage" box marked. But the signature on that document purports to be *plaintiff's*—even though it is undisputed that she did not sign it.[5]

In sum, even if a factual dispute exists over whether Kevin acted as plaintiff's agent, the written disclosures presented to him fall short of what MCL 257.233a requires. There is no evidence that he received a certificate of title disclosing the mileage discrepancy, and the other documents—the "Odometer Disclosure Statement" and the "Application for Title and Registration Statement of Vehicle Sale"—likewise fail to satisfy the statute. The trial court therefore correctly granted summary disposition on this claim.

## C. INTENT TO DEFRAUD

Defendant also challenges the trial court's finding, made after an evidentiary hearing, that it acted with "intent to defraud" under MCL 257.233a(15). We review such findings for clear error. MCR 2.613(C). A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tuttle v Dep't of State Hwys*, 397 Mich 44, 46; 243 NW2d 244 (1976). Unlike the legal conclusion that defendant violated MCL 257.233a(1) and (3), the trial court's determination of fraudulent intent rested on its "special opportunity . . . to judge the credibility of the witnesses who appeared before it," which we are required to give particular deference under MCR 2.613(C). We are not left with a definite and firm conviction that the court erred.

Michigan's law of fraud is summarized in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), which explains that "Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Id*. at 555. "These doctrines include actionable fraud, also known as fraudulent misrepresentation; . . . and silent fraud, also known as fraudulent concealment." *Id*. The elements of actionable fraud are:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any

---

[4] The form also omits the required "reference to [MCL 257.233a] and comparable federal law" under MCL 257.233a(1)(f), further suggesting that it was not designed to satisfy the statute's consumer disclosure requirements.

[5] The document was submitted with defendant's response to plaintiff's motion for summary disposition and attached to an unsigned, unsworn affidavit from the dealership's manager. Although a signed affidavit was filed a few days later, it was untimely under MCR 2.116(G)(1)(ii), and even if considered, it did not state that the certificate of title had been presented to Kevin.

-6-

knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. [*Id*., quoting *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919).]

Relatedly, the doctrine of silent fraud "holds that when there is a legal or equitable duty of disclosure, '[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood . . . .' " *Titan*, 491 Mich at 557, quoting *Tompkins v Hollister*, 60 Mich 470, 483; 27 NW 651 (1886).

Defendant offers little to contest the trial court's finding. It asserts only that it is "clear . . . from the testimony that was presented at the evidentiary hearing" that it lacked intent to defraud plaintiff or her father. It reiterates that Kevin was orally informed of the mileage issue and that he signed the Application for Title form where the "X" was placed near the "Not Actual Mileage" box.

Those assertions do not undermine the trial court's conclusions. The court noted that much of defendant's theory hinged on Kevin's alleged role as plaintiff's agent, yet no writing evidenced such an agency, and plaintiff denied making any such appointment. The court found credible Kevin's testimony that he did not sign his daughter's name on any documents. Given that her signature appeared on documents she indisputably did not sign, the only remaining explanation was that defendant forged it. The court also found it troubling that defendant's online advertisement failed to disclose the mileage discrepancy, concluding that "that was an intentional misrepresentation and clearly reckless disregard of the truth of the matter asserted." Given the trial court's credibility findings and the record as a whole, we cannot conclude that the trial court clearly erred in concluding that defendant acted with intent to defraud.

## III. TREBLE RECOVERY

Both parties challenge the trial court's monetary award. Defendant contends that because plaintiff elected rescission as her remedy, she was not eligible for treble damages under the statute. Plaintiff counters that the trial court erred by declining to treble the $13,000 purchase price. Under MCL 257.233a(15), a person who violates the statute "with intent to defraud" is "liable in an amount equal to 3 times the amount of actual damages sustained or $1,500.00 whichever is greater." The question, then, is what qualifies as "actual damages," a term the statute does not define. We conclude that the refund of the purchase price ordered as part of rescission is restitution, not "actual damages," and therefore not subject to trebling. By contrast, the incidental expenses plaintiff incurred in reliance on the transaction qualify as damages and were properly trebled.

## A. PURCHASE PRICE

While MCL 257.233a(15) authorizes treble recovery of "actual damages," no case has defined that term in the context of the odometer statute. In construing "actual damages" under

MCL 600.2919a,[6] however, this Court defined it as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Alken-Ziegler, Inc v Hague*, 283 Mich App 99, 103; 767 NW2d 668 (2009) (citation omitted). At issue here is whether the return of the purchase price to plaintiff as part of rescinding the contract qualifies as "compensat[ion] for a proven injury or loss."

When a contract is rescinded, the return of the purchase price is a form of restitution. See 2 Restatement Restitution & Unjust Enrichment, 3d, § 54(1)(a), p 262 ("A person who has transferred money or other property is entitled to recover it *by rescission and restitution* if the transaction is invalid or subject to avoidance . . . .") (emphasis added). If it is restitution, then it is *not* damages, because the law consistently treats damages and restitution as separate forms of relief. "[D]amages is a remedy different in kind from rescission and restitution . . . ." 2 Restatement Restitution, § 54, comment *i*, p 284. See also 1 Restatement Restitution, § 13, comment *h*, pp 173-177 (contrasting restitution with damages).

In the language of *Alken-Ziegler*, the $13,000 refund is not repayment for a *loss* but a form of *restitution*, which "requires a mutual restoration and accounting in which each party restores property received from the other." 2 Restatement Restitution, § 54(2)(a), p 262. Plaintiff is not being compensated for an injury; she is unwinding the transaction and returning the vehicle in exchange for a refund of the purchase price. Because restitution is not a form of damages, the trial court did not err in declining to treble that aspect of the recovery.

## B. INCIDENTAL EXPENSES

The more nuanced question is whether the trial court properly trebled plaintiff's incidental expenses. That issue falls into a gray area. "Damages always begin with the aim of compensation for plaintiff . . . . Restitution, in contrast, begins with the aim of preventing defendant's unjust enrichment." Dobbs & Roberts, Law of Remedies: Damages—Equity—Restitution (3d ed), § 3.1, p 215. Plaintiff's incidental expenses—such as the $645.07 she paid to register the vehicle in Colorado—conferred no benefit on defendant. They were costs plaintiff incurred in carrying out the transaction, and while they must now be unwound, they did not unjustly enrich defendant. Rescission, however, is not limited to restoring property received from another; it may also "compensate[] the other for loss from related expenditure as justice may require." 2 Restatement Restitution, § 54(2)(c), p 262. If such payments are characterized as restitution, they would not qualify as damages subject to trebling.

---

[6] MCL 600.2919a provides a treble damages remedy for conversion—a tort with a well-recognized measure of damages. As noted, although the parties assume MCL 257.233a(15) creates an independent cause of action, it is not clear that it does. For the purpose of analyzing plaintiff's remedies, we analogize to fraud, as the relief sought and factual basis are similar. "A transfer induced by fraud or material misrepresentation is subject to rescission and restitution." 1 Restatement Restitution & Unjust Enrichment, 3d, § 13(1), p 165. See also *Matilda*, p 23 ("So I buy an old dump that's got about a hundred and fifty thousand miles on the clock. I get it cheap. But no one's going to buy it with a mileage like that, are they?").

Traditionally, the common law required plaintiffs to elect between two inconsistent remedies: affirm the contract and seek damages or disaffirm it and seek restitution. See Dobbs & Roberts, § 9.3, p 739 ("Under traditional doctrine, . . . a plaintiff who has two 'inconsistent' remedies must 'elect' between them and pursue only one of them."). Michigan, however, has recognized a broader remedial regime:

> Under our practice the law permits an action for damages with or without rescission, and if *with rescission* a recovery of the purchase price with interest and such *additional damages* as plaintiff may have suffered by reason of losses and expenses incurred in that connection which were the natural and reasonable consequences of the fraud perpetrated. [*Laubengayer v Rohde*, 167 Mich 605, 612; 133 NW 535 (1911) (second emphasis added).]

*Laubengayer* involved the sale of real property, as did later cases applying its rule. See *Mock v Duke*, 20 Mich App 453, 455-456; 174 NW2d 161 (1969); *Head v Benjamin Rich Realty Co*, 55 Mich App 348, 360; 222 NW2d 237 (1974).[7] But we see no reason to confine the principle to real estate transactions.

Extending it here confirms that this aspect of plaintiff's recovery is properly labeled a form of "damages." The Legislature has expressly defined "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected" as "incidental damages." MCL 440.2715(1). That section "is intended to provide reimbursement for the buyer who incurs reasonable expenses in connection with the handling of rightfully rejected goods or goods whose acceptance may be justifiably revoked." UCC § 2-715, official comment 1 (2023). The Legislature has also repudiated the traditional rule—whether or not used in Michigan—that damages are inconsistent with restitution. MCL 440.2721. "This section . . . makes it clear that . . . rescission of the contract for fraud . . . [does not] bar[] other remedies unless the circumstances of the case make the remedies incompatible." UCC § 2-721, official comment.

Construing a *Laubengayer* recovery as a form of damages is also consistent with commentary on the law of damages more broadly. For example:

> The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

---

[7] See also 7 Michigan Civil Jurisprudence, Damages, § 70, p 396 ("If a vendee [of real estate] elects to rescind the transaction because of the vendor's fraud, the purchaser is entitled to the amount paid as the purchase price, with interest and additional damages such as any losses and expense incurred as the natural and reasonable consequences of the fraud perpetrated.").

(b) *pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.* [3 Restatement Torts, 2d, § 549(1), pp 108-109 (emphasis added).]

See also Restatement Torts, 3d, Liability for Economic Harm, § 9, comment *b(1)*, pp 81-82 (noting that restitution "can be supplemented by awards of incidental damages . . . to reflect costs that the defrauded party incurred in reliance on the transaction."). Moreover, the suggestion in § 54(2)(c) of the Restatement of Restitution that such compensation is a form of "restitution" is an oversimplification; the comments clarify that these are "damages":

> Rescission of the parties' exchange may leave the claimant with losses from related expenditures (as distinct from payment of the price) made in reliance on the transaction that is being set aside. Compensation of such loss by an award of damages is . . . not necessarily inconsistent [with an award of restitution] when the claimant's basic entitlement is to be restored to the status quo ante. Damages measured by the claimant's expenditure can be included in the accounting that accompanies rescission, in order to do complete justice in a single proceeding.

> Recovery of what are commonly called "incidental damages" may thus be allowed in connection with rescission, consistent with the remedial objective of restoring the claimant to the precontractual position. [2 Restatement Restitution, § 54, comment *i*, pp 283-284.]

In sum, compensatory payments made alongside an order of restitution are "incidental damages" and therefore subject to trebling under MCL 257.233a(15). We therefore affirm the trial court's decision to treble the incidental damages it awarded to plaintiff.

## IV. ATTORNEY FEES

On cross-appeal, plaintiff also challenges the trial court's handling of her request for attorney fees. Because the court reduced her requested fees without adequate explanation, we vacate its award and remand for reconsideration under the proper standard.

"[A] party is not entitled to an award of attorney fees and costs unless such an award is expressly authorized by statute or court rule." *Kennedy v Robert Lee Auto Sales*, 313 Mich App 277, 285-286; 882 NW2d 563 (2015). We have already determined that plaintiff satisfied the requirements of MCL 257.233a(15) to recover attorney fees. A party seeking such fees bears the burden of establishing their reasonableness. *Id*. at 286. We review a trial court's attorney fee award for an abuse of discretion. *Id*. at 283. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (citation omitted).

When a statute authorizes a reasonable attorney fee, the proper framework is set out in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 275-276; 884 NW2d 257 (2016). Under that framework, "a trial court must begin its reasonableness analysis 'by determining the fee customarily charged in the locality for similar legal services' and then multiplying that number 'by the reasonable number of hours expended in the case.' " *Pirgu*, 499 Mich at 275, quoting *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008). After calculating that baseline figure, the court should consider whether to adjust it based on factors such as:

(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Id*. at 275, quoting *Smith*, 481 Mich at 529.]

Here, the trial court stated that it considered the experience and reputation of plaintiff's counsel and the overall difficulty of the case. It concluded that this was a "document case" that did not require a difficult presentation, and it awarded $30,000 in attorney fees—an amount it viewed as justified by the results obtained, counsel's experience, and the case's complexity.

But the trial court did not begin its analysis "by determining the fee customarily charged in the locality for similar legal services and then multiplying that number by the reasonable number of hours expended in the case." *Pirgu*, 499 Mich at 275 (quotation marks and citation omitted). Instead, it skipped the math and settled on a round number. And while it considered some of the *Pirgu* factors—such as the case's difficulty and the results achieved—it did not address the others. A trial court abuses its discretion when it does not begin by multiplying a reasonable hourly rate by the number of hours expended and fails to acknowledge and briefly discuss the relevant factors. *Id*. at 282-283. We therefore vacate the attorney fee award and remand for reconsideration consistent with *Pirgu*.

## V. CONCLUSION

We summarize our holdings as follows: First, the trial court properly granted summary disposition on plaintiff's claim that defendant violated MCL 257.233a(1) and (3). Second, the trial court did not clearly err in finding that defendant acted with intent to defraud under MCL 257.233a(15). Third, although incidental expenses incurred in connection with the transaction are "damages" subject to trebling under MCL 257.233a(15), restitution of the $13,000 purchase price as part of rescission is not. We therefore affirm the trial court's decision to treble incidental damages and its refusal to treble the purchase price. Fourth, because the trial court failed to conduct a proper *Pirgu* analysis in awarding attorney fees, we vacate that portion of the judgment and remand for further proceedings.

/s/ Matthew S. Ackerman
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien